In the Matter of A–1 IMPERIAL MOV-
ING & STORAGE COMPANY, INC.,
Bankrupt.

No. 72–205–Bk.

United States District Court,
S. D. Florida,
Miami Division.

Nov. 24, 1972.

Paul E. Gifford, and William A. In-
graham, Jr., Miami, Fla., for petitioner.

J. B. Booher, of Booher & McGrotty,
Fort Lauderdale, Fla., for Trustee.

## ORDER ON PETITION FOR REVIEW

ATKINS, District Judge.

This cause is before the Court on the petition of a creditor, Associates Capital Corporation, to review the determination of the Referee in Bankruptcy that Associates had not perfected its security interest on a forklift truck sold to the bankrupt, A–1 Imperial Moving and Storage Company, Inc., and that its asserted lien was invalid as against the trustee in bankruptcy. The issue posed by this petition is whether the financing statement filed April 9, 1971, under the name A–1 Imperial Moving and Storage Company, Inc., the debtor's trade name, perfected the creditor's security interest as against the trustee in bankruptcy, when the debtor was incorporated on April 23, 1971 as 6105 Corporation, but changed its corporate name to A–1 Imperial Moving and Storage Company, Inc. on January 24, 1972, prior to its May 22, 1972 bankruptcy petition.

The Referee made two rulings in his excellent order of July 17, 1972. First, he decided that the filing of the financing statement under a name other than the debtor's correct name in this case was not a minor error and was seriously misleading. Secondly, he ruled that the validity of the financing statement should be determined as of the date of its filing and that the statement was therefore ineffective to perfect Associates' security interest.

■ The first of those rulings rests on solid ground. The opinion of the Referee is well-documented. The recent

case of In Re Thomas a/k/a West Coast Avionics, 466 F.2d 51 (9th Cir. 1972), also supports that conclusion. Associates, however, argues that on April 9, 1971, it had no reason to believe that the debtor's name would become 6105 Corporation. It dealt with an organization known to it as A-1 Imperial Moving and Storage Company, Inc. The financing statement was filed two weeks before the debtor's incorporation under the name 6105 Corporation. Additionally the corporation continued to use the unregistered trade name A-1 Imperial Moving and Storage Company, Inc. during the period from April 23, 1971 until January 24, 1972.

This essentially equitable appeal has some merit. It finds support in the opinion of a referee in In Re The Grape Arbor, Inc., 6 UCC Rep.Serv. 632 (E.D.Pa.1969), which involved the validity of a security interest apparently perfected six days after the debtor had, without the knowledge of the lender, applied to change its corporate name. As the Referee observed, in upholding the validity of the security interest:

> I find no provision in the Uniform Commercial Code for rerecording a perfected security interest when the debtor effects a change of name. This is especially true if the secured party has no knowledge of that change. To hold otherwise would mean that a clandestine change of name could divest a secured creditor of its property rights. *Id.*

Associates overlooks, however, the ease with which it could have insured the validity of its security interest with a timely check of the Secretary of State's records. This failure, considered in conjunction with the inadequacy of the financing statement for notice purposes, compels the Court to agree that the statement was invalid prior to January 24, 1972.

It is not necessary to dwell on these contentions, as the Court feels that the subsequent events did indeed breathe life into the previously invalid April 9 financing statement. The trustee in the case *sub judice* concedes that an identical filing under the name A-1 Imperial Moving and Storage Company, Inc., after the January name change, would have been effective as of that date.

He nevertheless insists that the original filing remained a nullity despite the congruence on and after January 24, 1972 between the debtor's name on the financing statement and the debtor's registered corporate name. To the Court, this interpretation exalts form over substance. The trustee did not assume his role as a hypothetical lien creditor under § 70c of the Bankruptcy Act until May 22, 1972. On that date, as on any date after January 24, 1972, the trustee or any inquiring party would have had notice of Associates' security interest. Since the purpose of the financing statement, to put interested persons on notice of another interest in the debtor's property, was fulfilled after January 24, 1972, the financing statement should be accorded validity as of that date. This does not, of course, create any *nunc pro tunc* validity over the April 9, 1971 to January 24, 1972 period.

The referee based his ruling on difficulties foreseen in a system where a security interest could become perfected at a time subsequent to the filing of the financing statement, due to a completely fortuitous act by the corporate debtor. Those difficulties, including the apparent preference question, must now be faced in this case. They will not, however, create a vast array of new uncertainties in the law of secured transactions. This case presents a freakish set of events, unlikely to recur.

Accordingly, it is ordered and adjudged that Associates' petition for review is granted. The July 17, 1972 order of the Referee declaring Associates' lien invalid as against the trustee is reversed and the cause is remanded for determination of any remaining issues.