**In Re SECO, INC., f/k/a Right Way Chemicals of Georgia, Inc., d/b/a Smith-Douglas of Illinois, Debtor.**

**Bankruptcy No. 285-01022.**

United States Bankruptcy Court, C.D. Illinois.

Aug. 27, 1986.

E. James Hopple, Columbus, Ohio, for debtor.

Kenneth Meeker, Danville, Ill., local atty. for debtor.

## OPINION

LARRY LESSEN, Chief Judge.

This matter is before the Court on Heller Financial, Inc.'s (hereinafter referred to as Heller) Motion for Additional Relief from the Automatic Stay to Compromise and Settle Accounts and for Allowance of Secured Claim. In this Motion, Heller asks the Court to determine whether it has a perfected, first and senior security interest in all accounts receivable of the Debtor, Seco, Inc. Heller also asks the Court to lift the automatic stay so it can take the steps necessary to collect the accounts. Shortly before the bankruptcy case was commenced, Heller had begun efforts to collect the accounts receivable. On November 11, 1985, the Ohio Bankruptcy Court authorized continued collection efforts by Heller.[1] However, the Ohio Bankruptcy

---

1. This case was transferred from the United States Bankruptcy Court for the Southern District of Ohio to the United States Bankruptcy Court for the Central District of Illinois on November 27, 1985.

Court's Order did not determine the extent and priority of Heller's security interest in the accounts, nor did it authorize Heller to compromise and settle the accounts without Court approval. Heller asserts it is not prepared to bear the significant costs and expenses required to effectively collect the accounts unless and until this Court determines the perfection and priority of its security interest in the accounts. Heller alleges that the debtor lacks both the time and resources to pursue vigorous collection of the accounts and that Heller's continue collection efforts would benefit all parties in interest.

In August, 1983, Heller and Seco, Inc. entered into a Loan Security Agreement which granted Heller a security interest in all existing and subsequently acquired accounts and inventory of Seco, Inc. In 1983, to perfect its security interest, Heller filed financing statements against "Seco, Inc." with the Ohio Secretary of State. (These filings will hereinafter be referred to as the original filings.) On or about March 28, 1984, Seco, Inc., an Ohio Corporation, merged with Right Way Chemicals of Georgia, Inc. (hereinafter referred to as Right Way), and the surviving entity was named Right Way. In anticipation of this merger, in February, 1984, Heller filed new financing statements against Right Way covering the same collateral.

Within four months of the merger, on June 12, 1984, Right Way changed its name back to Seco, Inc., now a Georgia corporation. On June 26, 1984, Seco, Inc. and the Union National Bank of Streator (hereinafter referred to as Union Bank) entered a security agreement, the collateral being Seco, Inc.'s accounts receivable and inventory. In July, 1984, the Union Bank filed financing statements against Seco, Inc. with the Illinois and Ohio Secretary of State and with the Franklin County Recorder. In August, 1984, Heller amended all three of its Right Way financing statements to reflect the name change back to Seco, Inc. In October, 1984, Heller again amended its Right Way financing statements to change the debtor's address, with

this second set of amendments showing the debtor as Seco, Inc.

The issue before the Court is whether the financing statements filed by Heller were sufficient to give it a perfected security interest in Seco, Inc.'s accounts receivable senior to the security interest of Union Bank in those same accounts. The controlling section of the Uniform Commercial Code is § 9–402(7) which states:

(7) A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or names of partners. Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than 4 months after the change, unless a new appropriate financing statement is filed before the expiration of that time. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.

Ill.Rev.Stat., Ch. 26, § 9–402(7) (1985). Union Bank concedes that through the original filings Heller properly perfected its security interest in the accounts of "Seco, Inc." when it was an Ohio corporation. Union Bank also acknowledges that Heller's financing statements filed against Right Way complied with the requires of U.C.C. § 9–402(7). However, when Right Way changed its name back to Seco, Inc., now a Georgia corporation, Union Bank argues that Heller was again required under § 9–402(7) to file a "new appropriate financing statement" within four months after the name change. Union Bank argues that the amendments to Heller's previously filed Right Way financing statements which state that "Debtor has changed its name to Seco, Inc." were "seriously misleading" and therefore ineffective to perfect a security interest in collateral acquired by the debtor more than four

months after the name change. Finally, Union Bank argues that by virtue of its July, 1984, financing statements it holds a prior and senior perfected security interest in the inventory and accounts of the debtor acquired more than four months after its name change from Right Way back to Seco, Inc.

■ The Court finds that Heller has at all times since the original filings had a perfected security interest in Seco's accounts receivable and that Heller's security interest is prior to that of Union Bank. In *In re A–1 Imperial Moving & Storage Co., Inc.*, 350 F.Supp. 1188, 11 UCC Rep.Serv. 1243 (S.D.Fla.1972), a financing statement was filed on April 9, 1971, under the debtor's trade name A–1 Imperial Moving and Storage Company, Inc. The debtor was incorporated on April 23, 1971, as 6105 Corporation, but changed its corporate name back to A–1 Imperial Moving and Storage Company, Inc. on January 24, 1972. The debtor filed bankruptcy on May 22, 1972. The Court held that the April 9, 1971, financing statement perfected the creditor's security interest as against the trustee in bankruptcy. The Court found that the financing statement was not valid during the period that the debtor's name was 6105 Corporation. But, when the debtor changed its name back to A–1 Imperial Moving and Storage Company, Inc., the financing statement once again became valid because it served its purpose of putting interested parties on notice of another's interest in the debtor's property. *Id.* at 1189. Similarly, Heller's original filings, while not valid during the three month period that the debtor's name was Right Way, once again became valid when the debtor's name was changed back to Seco, Inc. Any party searching the records under the name Seco, Inc. would find Heller's financing statements and would be put on notice of Heller's security interest. Indeed, Union Bank admits that a search done at the time it filed its July, 1984, financing statements revealed Heller's 1983 filings against Seco, Inc. However, Union Bank argues that the 1983 filings were against Seco, Inc. (an Ohio corpora-

tion), while after the name change back from Right Way the debtor became Seco, Inc. (a Georgia corporation).

This argument is captious, since both before and after the three month period the debtor was named Right Way, its name was "Seco, Inc.". Nowhere in its name did "an Ohio corporation" or "a Georgia corporation" appear. Union Bank's own financing statements, like Heller's, were filed against "Seco, Inc.". Further, Union Bank had actual knowledge of Heller's prior security interest in Seco, Inc.'s inventory and accounts receivable. Union Bank's own security agreement with Seco, Inc. states that at the time Union Bank made its loan to Seco, Inc. there was already a security interest in the borrower's accounts receivable and inventory in favor of Heller.

Whether a financing statement is "seriously misleading" under § 9–402(7) is a question of fact. *In re West Coast Food Sales, Inc.*, 637 F.2d 707, 710 (9th Cir.1981). This Court finds that Heller's original filings against Seco, Inc. were not seriously misleading at the time Union Bank filed its financing statements against Seco, Inc. Thus, Heller was not required to file new financing statements to protect its perfected status. As the Court found in *In re West Coast Food Sales, Inc.*, *supra* at 709, to require Heller to file new financing statements in this situation would allow the debtor to evade the obligations of a validly executed security agreement by the simple expedient of changing its name for a three month period. It would also allow Union Bank to seize upon a mere technicality to acquire a first and prior security interest in the inventory and accounts receivable when it had both record notice and actual knowledge of Heller's prior security interest in the same collateral.

Section 9–402(7) provides that when a debtor changes its name so that a filed financing statement becomes seriously misleading, "the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed be-

fore the expiration of that time". Heller's original filings did become seriously misleading during the period that the corporation changed its name to Right Way. If the debtor's name had remained Right Way, Heller's original filings would not have remained effective after four months. But, since the name change to Right Way lasted less than four months, the original financing statements against Seco, Inc. never lapsed. Then, since the debtor's name was changed back to Seco, Inc., the original filings were no longer seriously misleading. They once more were effective to serve their purpose of putting third parties on notice that a security interest may exist in certain property and that prospective creditors should contact the parties to obtain the details. *See, In re Little Brick Shirthouse,* 347 F.Supp. 827, 829 (N.D.Ill.1972).

The purpose served by Heller's filing new financing statements against Right Way was to protect its security interest should the name change to Right Way last more than four months. Since the name change lasted less than four months, Heller's filings against Right Way became unnecessary to protect Heller's security interest. Likewise, Heller's subsequent amendments to the Right Way filings to reflect the debtor's name change back to Seco, Inc. were also unnecessary. However, these amendments did not serve to divest Heller of its security interest. Even if the Court were to assume arguendo that Heller's original filings were not continually effective, its filings against Right Way and its subsequent amendments to the Right Way filings reflecting the debtor's name change back to Seco, Inc. would be sufficient to protect its security interest. The Court finds no merit in Union Bank's argument that while Heller's original filings and Heller's filings against Right Way complied with § 9–402(7), Heller's amendments to the Right Way filings stating that the debtor had changed its name to Seco, Inc., did not comply with the statute and thus Heller's security interest was unperfected at the time Union Bank filed its financing statements. The essence of Union Bank's argument is that the amendments were not "new appropriate financing statements" as required by § 9–402(7).

The Court finds these amendments are sufficient to comply with the terms of the Statute. They are signed by the President of Seco, Inc., on behalf of "Seco, Inc., f/k/a Right Way" and are indexed by the filing offices under the name Seco, Inc. The U.C.C. Comments state that § 9–402 adopts the system of "notice filing".

The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs.

U.C.C. § 9–402, Comment 2. In *Matter of Reiber,* 740 F.2d 10 (8th Cir.1984), the Court noted that § 9–402 adopts a system of notice filing and thus the validity of a financing statement depends upon its ability to give notice of the security interest to other creditors. In considering the effectiveness of an amendment to perfect a security interest, the Court stated that "the amendment, which contained all the requisites of a filing statement was sufficient to perfect the Bank's interest". *Id.* at 12. The Court found its designation as an amendment was not seriously misleading. *Id.*

Heller's amendments contained all the requisites for a financing statement set forth in § 9–402(1) and they were sufficient to give any party searching the records notice of Heller's security interest. Thus, even if the original filings had not remained continuously effective, the filings under Right Way and the amendments thereto would have been sufficient to protect Heller's security interest.

Therefore, Heller's Motion for Additional Relief from the Automatic Stay to Compromise and Settle Accounts and for Allowance of Secured Claim is *GRANTED.* Heller possesses a first and senior perfected security interest in the accounts receivable of Seco, Inc., and the proceeds thereof. The Court will allow its secured claim to

the extent of its interest in those accounts. The Court further lifts the automatic stay to allow Heller to exercise its rights under its security agreement with Seco, Inc., including the right to compromise and settle the accounts or to institute legal proceedings to collect the accounts.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.