GEORGE N. VOUTIRITSAS *et al.*, Plaintiffs and Cross-Appellants and Counterdefendants-Appellees, v. INTERCOUNTY TITLE COMPANY OF IL-LINOIS, Defendant and Cross-Appellee and Counterplaintiff-Appellant.

First District (1st Division)   No. 1—94—1613

Opinion filed March 29, 1996.

172

Aronberg, Goldgehn, Davis & Garmisa, of Chicago (Mitchell S. Goldgehn, Nathan H. Lichtenstein, and Lisa J. Brodsky, of counsel), for appellant.

Friedman & Holtz, P.C., of Chicago (Gregory A. Friedman and Evdoxia Beroukas, of counsel), for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs-counterdefendants George Voutiritsas and Harry Giotis (plaintiffs), along with their former partners Gene Shapiro (Shapiro) and Benjamin Steiner (Steiner), brought an action for declaratory judgment and other relief against defendant-counterplaintiff Intercounty Title Company of Illinois (ITC), regarding the sale of certain property located at 205 West Randolph, Chicago, and with respect to the parties' rights and obligations under section 9—506 of the Uniform Commercial Code (UCC) (810 ILCS 5/9—506 (West 1992)).[1] ITC brought a counterclaim against plaintiffs for breach of a title indemnity agreement and personal undertakings and, alternatively, for a deficiency judgment pursuant to section 9—504 of the UCC. 810 ILCS 5/9—504 (West 1992).

On September 14, 1993, the trial court entered a final order with regard to plaintiffs' third amended complaint,[2] finding that plaintiffs failed to tender any amount to ITC to redeem a purchase money note, and that ITC's sale of the note and trust deed was commercially reasonable. The trial court further found against ITC on all counts of its counterclaim. However, upon ITC's motion for reconsideration, the trial court entered a memorandum opinion and order on April 11, 1994, vacating its finding as to the commercial reasonableness of the UCC sale, concluding that ITC's sale of the note and trust deed was commercially unreasonable. The trial court further denied ITC's

[1]On May 20, 1987, Shapiro and Steiner were dismissed as parties plaintiff.

[2]Neither plaintiffs' second nor third amended complaint is included in the record on appeal. In their brief, plaintiffs cite to a page in the record which reveals the trial court's order granting them leave to file a third amended complaint, but no third amended complaint is attached.

motion for reconsideration of its counterclaim and denied plaintiffs' request for damages.

ITC now appeals from the September 14, 1993, and April 11, 1994, orders of the trial court. On appeal, ITC contends that: (1) the trial court erred in applying article 9 of the UCC to the obligations of the parties; (2) the trial court erred in finding that ITC's UCC sale of the note and trust deed was commercially unreasonable; and (3) ITC is entitled to the remaining proceeds from the certificate of error.

In their cross-appeal, plaintiffs contend that the trial court erred as follows: (1) entering its order of June 1, 1988, granting partial summary judgment in favor of ITC, and finding that plaintiffs were bound by the actions of former partners Steiner and Shapiro regarding certain dealings with ITC; (2) entering its order of September 14, 1993, finding that plaintiffs failed to make tender and that tender was not excused; (3) entering its order of April 14, 1994, finding that no value was established for the $3 million note secured by a junior mortgage on the property; and (4) entering its interlocutory order of June 28, 1989, striking and dismissing count I of plaintiffs' third amended complaint for conversion with prejudice. Plaintiffs further contend that: ITC breached its fiduciary duty to plaintiffs; ITC tortiously interfered in the contract between plaintiffs and the purchasers; and the trial court erred in excluding evidence of proposed settlement negotiations at trial.

The record reveals the following relevant facts. Prior to December 13, 1985, plaintiffs, together with Steiner and Shapiro, created the Venture 205 Partnership (partnership) to acquire property known as 205 West Randolph Street, Chicago (the property). At that time, the property was encumbered by a first mortgage in the then outstanding sum of approximately $12 million (first mortgage) and by general real estate tax delinquencies for the years 1981, 1982, 1983 and 1984 exceeding $1 million.

On or about September 30, 1985, the partnership entered into a contract to sell the property (purchase agreement) to Harold S. Kloosterman and George Comfort & Sons (purchasers), for $16 million. The purchase price was to be satisfied by the purchasers' assumption of the first mortgage and the purchasers' delivery to the partnership of a nonrecourse purchase money note in the amount of $3 million (note), secured by a second deed of trust (trust deed). The purchase agreement required the partnership to provide the purchasers with a title insurance policy insuring title to the property in favor of the purchasers, free and clear of all delinquent real estate taxes.

However, at the time of sale, the partnership discovered that the cost of redeeming the delinquent real estate taxes exceeded the

amount of funds available at closing, because the taxes in dispute for 1981 had been purchased by a tax buyer in connection with the buyer's purchase of delinquent 1983 taxes. In addition, the partnership was awaiting a final decision on a certificate of error proceeding with respect to the 1981 taxes.

In order to complete the sale, the partnership requested that ITC issue a title policy insuring over the delinquent taxes. In return, the partnership promised to reimburse ITC for any funds it expended. Plaintiffs deposited with ITC $786,395.69 to be applied toward the tax redemption. In addition, plaintiffs executed a title indemnity escrow agreement (TI), indemnifying and holding ITC harmless from all risks, costs, expenses and attorney fees that ITC might incur by virtue of issuing the title policy according to the partnership's request. The terms of the TI provided that plaintiffs, along with Steiner and Shapiro (sellers), agreed to discharge, satisfy or remove the exceptions, including the taxes, on or before January 15, 1987. In addition, in the event the tax liability increased due to lapse of time or otherwise, the sellers were required to furnish ITC with additional deposits whenever ITC requested them to do so. Plaintiffs also assigned to ITC the note and trust deed to be received by the partners from the purchaser, and executed personal undertakings (PUs) whereby each partner pledged in his individual capacity to reimburse ITC and pledged his interest in the note as security.

Thereafter, the partnership closed the sale of the property and deposited the net sale proceeds of $786,395.69 into the TI fund along with the note, assignment and trust deed.

After the sale of the property, the purchasers made sporadic payments under the note, which were deposited directly into ITC's TI account. The purchasers made no further payments after October 1986.

As of January 15, 1987, the delinquent taxes remained unpaid. On February 17, 1987, Laurence W. Capriotti, ITC's president (Capriotti), sent written notice advising the partnership that a shortfall existed in the TI fund in the amount of $609,223.83, and demanding that the partnership deposit that sum by February 24, 1987, to permit payment of the delinquent real estate taxes on February 26, 1987. On February 26, 1987, Richard Ungaretti (Ungaretti), plaintiffs' attorney, wrote to Capriotti, stating his belief that the assignment, TI and PUs did not afford ITC a security interest in the note and trust deed, and instructing ITC to reimburse itself from the proceeds of the note for any corporate funds expended by ITC in redeeming the taxes.

On February 26, 1987, ITC redeemed the majority of the delinquent real estate taxes, advancing $609,223.83 of its own funds. ITC recorded the assignment and sent written notice to the partnership

advising it of ITC's expenditure of funds and requesting that the partnership satisfy its obligations under the TI and PUs. By letter dated March 3, 1987, ITC's attorney, Allen Brown (Brown), advised plaintiffs that ITC had redeemed the taxes by tendering the $1,041,106.20 in plaintiffs' advance fund and $609,223.83 of ITC corporate funds to the clerk of Cook County. However, in that letter, Brown claimed both that ITC had the right to be reimbursed for its out-of-pocket expenditure in redeeming the taxes, and that ITC "owned" the note, and would foreclose on the purchasers and would seek a deficiency judgment against the partnership for any amount less than the $3 million face value of the note obtained from that foreclosure. On September 27, 1987, ITC paid the remainder of the delinquent real estate taxes listed as exceptions on the indemnity escrow, expending an additional $26,156 of its own funds.

ITC maintained that it owned the note and trust deed under the terms of the TI and the PUs. However, in an effort to defeat plaintiffs' claims that ITC was not the outright owner of the note and trust deed, and thus not entitled to commence foreclosure proceedings on these instruments, ITC sent plaintiffs notice that it would conduct a UCC public sale of their interest in the note on May 20, 1987.

ITC advertised a public sale for three weeks in the Chicago Tribune as follows:

"NOTICE OF PUBLIC SALE

NOTICE IS HEREBY GIVEN that on the 20th Day of May 1987 at the offices of Intercounty Title Company of Illinois, 120 West Madison Street, Chicago, Illinois, Suite 400, Intercounty Title Company of Illinois will offer the right, title and interest of Harry Giotis and George N. Voutiritsas in and to a certain note dated December 13, 1985, in the amount of $3,000,000 as secured by American National Bank and Trust Company of Chicago as Trustee under Trust Agreement dated November 21, 1985 and known as Trust Number 66061

Said Note is currently in default and is subject to litigation now pending in the Circuit Court of Cook County [docket number].

George N. Voutiritsas and Harry Giotis have claimed an aggregate 60% legal or equitable interest in said Note. They have also claimed that Intercounty Title *** is a secured party having a security interest in said Note. Intercounty Title Company *** steadfastly denies that it is a secured party and states that it is the absolute 100% legal and equitable owner to said Note having full legal and equitable title to said Note. Nonetheless in order to extinguish whatever claims exist which are asserted to be to the interest of Intercounty Title Company *** in said Note, Inter-

county Title Company *** hereby offers for sale to the highest bidder on the 20th day of May, 1987 at the hour of 10:00 a.m. at the offices of Intercounty Title *** whatever legal or equitable interest [plaintiffs] or either of them or both of them may have in and to said Note.

The successful bidder will be required to deposit 25% of the bid price by cashier's check or certified check upon the conclusion of the sale, and must pay for and acquire said 60% interest in said Note no later than 48 hours after said sale is consummated. Intercounty Title *** reserves the right to bid at the sale.

PLEASE TAKE NOTICE THAT INTERCOUNTY TITLE COMPANY OF ILLINOIS DENIES THAT HARRY GIOTIS AND GEORGE N. VOUTIRITSAS HAVE ANY INTEREST IN SAID NOTE. THE SUCCESSFUL BIDDER SHOULD KNOW THAT WHATEVER RIGHT, TITLE AND INTEREST THEY ACQUIRE WILL BE CONTESTED IN THE PROCEEDING NOW PENDING IN THE CIRCUIT COURT OF COOK COUNTY ENTITLED GEORGE N. VOUTIRITSAS ET AL. V. INTERCOUNTY TITLE COMPANY OF ILLINOIS 87 CH 02453."

The advertisement concluded by identifying the person to contact for additional information.

On May 18, 1987, plaintiffs filed a petition for preliminary injunction requesting that the trial court enjoin ITC from holding the UCC sale. The trial court denied plaintiffs' petition and allowed ITC to conduct the UCC sale of plaintiffs' purported interest in the note. On May 20, 1987, ITC held the UCC sale. ITC was the only bidder at the sale and bid $350,000. The only other person who attended the UCC sale was plaintiffs' counsel, James Stamos, who objected to the sale on the record.

Subsequently, ITC, took the necessary steps to foreclose on the note and trust deed, including the expenditure of in excess of $13,550,000 to purchase Principal Mutual's note, first mortgage and assignment of rents. Following the entry of an agreed judgment of foreclosure on September 17, 1987, the Cook County sheriff held a public sale of the property on October 29, 1987. ITC was the only bidder, purchasing the property for $300,000, leaving a deficiency in excess of $3 million.

On February 21, 1990, Steiner and Shapiro received a final judgment award in the certificate of error proceeding relating to the disputed 1981 taxes, resulting in a refund of $287,740.56, the reduction of the 1981 assessment plus interest. The refund was received in the form of a draft payable to La Salle National Bank as trustee of trust number 101879 (Trust). The Trust had been the title holder of the property until sale of the property in December 1985. The award

check was deposited into an interest-bearing account and all parties claiming an interest in the proceeds were given time to file petitions against the proceeds.

On June 1, 1988, the trial court entered partial summary judgment in favor of ITC with respect to the following issue:[3] (1) The TI agreement is binding on the partnership. The trial court then determined the following issues remained: (1) whether the assignment created a security interest; and (2) whether plaintiffs properly tendered amounts due ITC to redeem the note and trust deed.

A trial on the two remaining issues commenced in the chancery division of the circuit court on July 15, 1991. On September 14, 1993, the trial court entered an order in favor of ITC on plaintiffs' complaint, finding that: (1) plaintiffs had not tendered any amount to ITC to redeem the note and trust deed; (2) tender was not excused by any excessive demand by ITC and (3) ITC's sale of the note and trust deed was commercially reasonable. The trial court further found against ITC and in favor of plaintiffs on ITC's counterclaim.

On October 14, 1993, ITC filed a motion for reconsideration of the trial court's order of September 14, 1993. Plaintiffs also filed a motion for reconsideration. On April 14, 1994, the trial court entered a memorandum opinion and order, vacating its finding as to the commercial reasonableness of ITC's UCC sale of the note and trust deed, and finding that the sale was commercially unreasonable. The trial court further denied ITC any relief under its counterclaim and claim to proceeds from the certificate of error and denied plaintiffs' request for damages.

The parties' timely appeals followed.

## A. THE APPEAL OF ITC

■ Preliminarily, we note that it is incumbent upon the appellants to provide a complete record on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958 (1984); *Dubey v. Abam Building Corp.*, 266 Ill. App. 3d 44, 639 N.E.2d 215 (1994). In addition, pursuant to Supreme Court Rule 341(e)(7), the parties are to provide ade-

---

[3]ITC's motion for summary judgment is not found in the record on appeal. Plaintiffs' response, entitled: "Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment Upon Its Answer and Affirmative Defenses," addresses only the following issues: (1) whether the title indemnity-escrow agreement executed by Steiner is binding on the partnership; (2) whether the note and trust deed is binding on the partnership; and (3) whether ITC can perfect an ownership interest in the note. The trial court's order merely states "partial summary judgment entered for the reasons stated in open court."

quate citation to the record in their briefs to support the issues raised. 134 Ill. 2d R. 341(e)(7). The parties in the present case have provided an immense 31-volume record in excess of 7,500 pages, yet have failed to include such significant documents as the plaintiffs' second and third amended complaints. Furthermore, ITC is in violation of Supreme Court Rule 341(e)(1) by failing to include a complete table of "Points and Authorities" in its brief. To the extent that the parties here have not complied with the supreme court rules, they have waived certain issues for review on appeal.

Initially, ITC contends that the trial court erred in applying article 9 of the UCC (810 ILCS 5/9—201 *et seq.* (West 1992)) to the obligations of the parties. ITC argues that the partnership's assignment and transfer of the note, trust deed and all proceeds therefrom into the TI fund did not create a security interest so as to place the obligations of the parties within the purview of article 9 of the UCC; that ITC received an absolute assignment; and that it conducted a UCC sale only to "make moot" plaintiffs' contention that ITC could not foreclose on the note and trust deed because the plaintiffs purportedly retained an interest in those instruments.

Plaintiffs respond that the $3 million note and trust deed were assigned to ITC as additional collateral pursuant to sections 9—203 and 9—204 of the UCC. 810 ILCS 5/9—203, 9—204 (West 1992).

■ Under sections 9—203 and 9—204, the requirements for the creation of a security interest by a debtor in favor of his creditor are that: (1) the debtor must have or acquire rights in the collateral; (2) the creditor must give value to the debtor; (3) the creditor and the debtor must agree that a security interest shall attach to the collateral; and (4) either the collateral must be in the possession of the creditor or there must be a written security agreement signed by the debtor which contains a description of the collateral. *Andrews v. Mid-America Bank & Trust Co.*, 152 Ill. App. 3d 139, 143, 503 N.E.2d 1120 (1987).

ITC admits that the intent of the parties governs whether a particular transaction creates a security interest or an assignment. See *Turk v. Wright & Babcock, Ltd.*, 174 Ill. App. 3d 139, 142, 528 N.E.2d 993 (1988). In the present case, the record shows that the parties agreed that a security interest was being created. At trial, Allen Brown, ITC's vice-president and general counsel, testified that the intent of the parties governs. Steiner testified that Capriotti insisted on additional collateral for the indemnification the sellers were giving. Capriotti testified that the purpose of taking the note and trust deed was to secure the obligations of the sellers. A letter from Steiner to Ungaretti reflects the assignment of the junior note and mortgage to ITC "as security for the indemnity given to it."

■ The record shows that the requirements of sections 9—203 and 9—204 have been fulfilled. The debtor, plaintiffs, Shapiro and Steiner, received the note as part of the sale price of the property, and the note was secured by the trust deed. The creditor, ITC, gave value to the debtor by insuring over the real estate taxes subject to the certificate of error and other taxes that had been sold so that the sellers could sell the property and provide clear title to the purchasers and first mortgagee. ITC fails to support its contention; therefore, we conclude that the trial court properly applied article 9 to the obligations of the parties.

Next, ITC contends that the trial court erred in determining that the UCC sale was commercially unreasonable.

ITC argues that its notice of public sale was proper and that the trial court is bound by its original findings granting partial summary judgment in favor of ITC with respect to the adequacy of notice. ITC cites the portion of the trial court's findings from the transcript of the June 1, 1988, proceedings, wherein the trial court states:

"[T]he only issue that remains *** is the issue of whether or not there was an offer to cure and whether the amount that was claimed due was in actuality the amount that was really due[.] So that's the issue.

* * *

Not the notice of sale. I saw what you were arguing about in terms of what was being sold and everything else, but I have resolved that in favor of the movant in the face of the pleadings in the case.

* * *

The notice is fine. The notice is valid."

ITC relies on *West Chicago State Bank v. Rogers*, 162 Ill. App. 3d 838, 515 N.E.2d 1261 (1987). There, the bank, as a secured party, brought an action to recover a deficiency judgment against Rogers, the borrower. The bank also sought reformation of deeds in trust and the assignment. Rogers filed a counterclaim and third-party complaint against the bank, alleging breach of trust and conversion of Rogers' property. The trial court ordered the proceedings bifurcated so that the issues regarding the reformation of the deeds and assignment could be determined by the chancery court. The chancery court held a trial on the equitable issues and found that the notice of sale was adequate as a matter of law and that the sale was commercially reasonable. At a jury trial on the remaining issues, the trial court denied Rogers' motion for a directed verdict on the issue of reasonable notification and commercial reasonableness of the sale. The jury

returned a verdict for Rogers and against the bank on the bank's complaint for the deficiency, and against Rogers and for the bank on Rogers' counterclaim and third-party complaint.

On appeal, Rogers argued that the trial court erred in refusing to give a jury instruction as follows:

"If you find from considering all of the evidence that BANK either failed to give reasonable notification of the sale or that the sale was not conducted in a commercially reasonable manner, then you are instructed that Rogers' [*sic*] is entitled to recover under both ROGERS' Counterclaim as a civil penalty to be assessed against BANK for BANK'S violation of the law applicable to such sales and ROGERS' Third Party Complaint against the BANK for tortious conversion of ROGERS' property." 162 Ill. App. 3d at 846-47.

This court determined that the instruction was correctly refused for several reasons, including that the chancery court had previously determined that the *notice of sale was adequate as a matter of law*, stating as follows: "A court may and should take judicial notice of other proceedings in the same case which is before it and the facts established therein." *Rogers*, 162 Ill. App. 3d at 847.

The present case is distinguishable from *Rogers*. Here, the record includes an order of the trial court granting in part and denying in part a summary judgment motion filed by ITC "for the reasons stated in open court." A transcript of the proceedings of June 1, 1988, shows that the trial court, Judge Roger Kiley presiding, granted summary judgment in favor of ITC on the issue of whether Shapiro and Steiner had the authority to bind the partnership. The trial court then stated:

"Then there is also the question of the notice: that is, the notice of sale. What exactly was it that this notice was selling, and how does it relate to this? Yes, the $3 million note was in default: that is the buyers were defaulting on this note. *** What is this the sale of? Is this the sale of the note because of the default on the note? Is it a sale of the interest of 'V and G' in this note in that the default is not on the note but on the 'V and G' obligation to Intercounty Title by virtue of the personal undertakings and the title indemnity agreement, the escrow agreement, and assignment?

It is certainly open for discussion as to exactly what it is.

* * *

In any event, there is certainly ample room for discussion on the notice of public sale as to what actually was going to be sold here and for what reason."

Later, the trial court made statements to the effect that the notice

was adequate and that it "resolved that in favor of the movant." The trial court also specifically stated that the only issue remaining was whether or not there was an offer to cure and whether the amount that was claimed due was in actuality the amount due.

Under these circumstances, this summary judgment hearing did not resolve the issues of both the adequacy of the notice of sale and the commercial reasonableness of the sale because the latter issue was tried later. On September 14, 1993, the trial court entered an order finding that ITC's sale of the note and trust deed was commercially reasonable. It is this finding that the trial court vacated upon the parties' motions for reconsideration.

■ Whether a sale is commercially reasonable is a question for the trier of fact. *Boender v. Chicago North Clubhouse Ass'n*, 240 Ill. App. 3d 622, 608 N.E.2d 207 (1992). The trial court's findings are entitled to great weight and will not be reversed unless they are against the manifest weight of the evidence.

■ Section 9—105 of the UCC defines "collateral" as the property subject to a security interest. The record shows that the collateral ITC held was the note and trust deed. Section 9—504 of the UCC provides that the secured party has a right to sell collateral after default, subject to the following conditions: (1) every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable; and (2) reasonable notification must be sent to the debtor. 810 ILCS 5/9—504(3) (West 1992). It is well established that the secured party is required to exercise due diligence to sell the collateral for the best price obtainable and to have a reasonable regard for the debtor's interest. *Boender*, 240 Ill. App. 3d at 629. Where by failing to advertise in a manner that will engender competitive bidding the secured party insures an opportunity for self-dealing, a court must scrutinize the sale closely. Where no one attends the public auction except the secured creditor, improper notice of the public auction may be inferred. *Boender*, 240 Ill. App. 3d at 630.

■ In the present case, the record reveals that the notice published in the Chicago Tribune failed to identify or refer to either the real estate located at 205 West Randolph Street in Chicago or to the trust deed that secured the note. Furthermore, the notice discouraged competitive bidding by only offering to sell a "claimed" 60% legal or equitable interest of plaintiffs in the note, and stating ITC's denial that it is a secured party and stating that it is the "absolute 100% legal owner" of the note. ITC was the only bidding party to attend the auction, thus implying improper notice.

While price alone does not establish commercial reasonableness,

this court has found that price is the *key component* in assessing commercial reasonableness (*Standard Bank & Trust Co. v. Callaghan,* 177 Ill. App. 3d 973, 977, 532 N.E.2d 1015 (1988)).

In the present case, the trial court found that ITC's bid was without substance and lacking in foundation. The trial court cited Allen Brown's testimony at trial that ITC's bid of $350,000 was not based on any appraisal, but rather was "pulled out of thin air," based on a number Brown had in his mind. The trial court found that although neither plaintiffs nor ITC presented any credible evidence to establish the fair market value of the note and trust deed at the time of sale, the record established that both parties considered the value to be significantly greater than $350,000. The $350,000 bid was significantly lower than the $3 million face value of the note, as well as lower than 60% of the $700,000 debt, or $420,000.

We therefore find the trial court's determination that the sale was commercially unreasonable to be consistent with the manifest weight of the evidence.

■ ITC further contends that it is entitled to the remaining proceeds from the certificate of error because it is the equitable owner of the proceeds. ITC argues that plaintiffs will be unjustly enriched if they are allowed to retain the proceeds from a refund for taxes which they never paid and for which they never reimbursed ITC.

The trial court held that the remaining funds in the tax escrow account are the property of plaintiffs and should be distributed to them. The trial court upheld this finding upon reconsideration. We stayed that portion of the trial court's order distributing the proceeds to plaintiffs pending this appeal. We now remand this cause to the trial court on this issue for a hearing to determine what amounts, if any, are due and owing the respective parties in accordance with the previous judgment of the trial court.

## B. PLAINTIFFS' APPEAL

■ In their cross-appeal, plaintiffs initially contend that the trial court erred in ruling that they were bound by the assignment executed by Steiner. The record shows that Judge Kiley found that plaintiffs benefitted from Steiner's agreement with ITC, and had it not been for Steiner's arrangements, the sale of the property would not have closed. Because the trial court found in plaintiffs' favor on this issue, plaintiffs' contention is moot.

Next, plaintiffs contend that the trial court erred in finding that they did not tender any amount to redeem the note, but rather, that ITC wrongfully rejected tender preventing them from redeeming the note and trust deed. The trial court found that plaintiffs did not pres-

ent any evidence to show that they tendered any amounts due ITC as required by section 9—506 of the UCC.

██ ██ Section 9—506 of the UCC provides a debtor's right to redeem collateral as follows:

"At any time before the secured party has disposed of collateral or entered into a contract for its disposition under Section 9—504 or before the obligation has been discharged under Section 9—505(2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition ***."

810 ILCS 5/9—506 (West 1992).

A valid tender requires readiness, willingness, and ability to perform as required by the agreement. *In re Estate of Krotzsch*, 48 Ill. App. 3d 178, 362 N.E.2d 805 (1977). In the present case, the record shows that plaintiffs never deposited any money with either ITC or the court. Plaintiffs' argument that they offered to pay ITC $707,223.83 to redeem the note, but that ITC rejected the offer, fails. The record shows that plaintiffs' attorneys sent a letter to Allen Brown stating that plaintiffs "might consider tendering" $609,223.83 plus a $98,000 service fee in return for the note. Plaintiffs' further argument that a certified check, produced in connection with a proposed settlement agreement that was never realized, constituted tender is unavailing.

In the alternative, plaintiffs argue that their failure to tender is excused by ITC's excessive demands. In support, plaintiffs cite the testimony of their former attorneys, Ungaretti and Stamos, stating that Brown informed them that ITC would not accept any amount less than $2 million to redeem the note.

The record shows that Ungaretti's testimony is inconsistent with his prior sworn deposition testimony wherein he denied any specific recollection of the content of any of his telephone conversations or written correspondence with Brown and stated that his recollection could not be refreshed.

ITC directs this court's attention to its motion to dismiss, filed on March 19, 1987, wherein it stated that it would return the note and trust deed to plaintiffs in return for payment of $609,223.83 plus interest, along with a court determined amount necessary to redeem remaining taxes, the $98,000 service fee, and costs.

Plaintiffs have therefore not shown that the trial court erred in determining that they did not tender.

██ Plaintiffs' next contention is that the trial court erred in determining that no value was established for the note and trust

deed. Plaintiffs argue that their 60% interest in the $3 million note established damages of, alternatively: $1.8 million, from the face value of the note; $750,000, based on a *proposed* offer to pay; $840,000, based on *proposed* settlement negotiations which settlement was not realized; and $1.2 million, based on an informal appraisal. Plaintiffs set forth a variety of calculations to come up with these different numbers and contend that any and all of the calculations are reasonable.

Although a secured creditor has the burden of proving commercial reasonableness, where the debtor is proceeding against the secured party under section 9—507(1) for failure to conduct a commercially reasonable sale, the debtor must carry the burden of proving the amount of that loss. *Boender*, 240 Ill. App. 3d at 632. Plaintiffs' loss is the difference between the fair market value of the property on the day of the sale and the amount of their debt. *Rogers*, 162 Ill. App. 3d at 848.

Plaintiffs provide no authority for their proposition that the trial court need consider statements made during settlement negotiations which never resulted in a settlement. Therefore, plaintiffs failed to prove that their loss was greater than their debt, and the trial court properly denied damages.

Plaintiffs also contend that the trial court erred in finding against them on the conversion count of their third amended complaint.[4]

■ The essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held. *In re Thebus*, 108 Ill. 2d 255, 259, 483 N.E.2d 1258 (1985). A proper complaint for conversion must allege: (1) an unauthorized and wrongful assumption for control, dominion, or ownership by a defendant over a plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property. *General Motors Corp. v. Douglass*, 206 Ill. App. 3d 881, 886, 565 N.E.2d 93 (1990). Where money is the subject of the alleged conversion, the plaintiff must further demonstrate that the money is capable of being described as a specific chattel. *Thebus*, 108 Ill. 2d at 260.

■ In the present case, plaintiffs have not alleged or shown an unconditional, absolute right to immediate possession of the note and trust deed after they defaulted on the collateral demand note and security agreement. Further, plaintiffs failed to prove tender or frustra-

---

[4]We are reminded that the third amended complaint is not in the record on appeal.

tion of tender by ITC. Plaintiffs' claim for conversion is therefore without merit. See *First National Bank v. Lachenmyer*, 131 Ill. App. 3d 914, 917, 476 N.E.2d 755, 758 (1985).

■ Plaintiffs further contend that the trial court erred in finding against them on count III of their third amended complaint against ITC for breach of fiduciary duty. Plaintiffs argue that ITC acted as the escrowee of plaintiffs' funds under the TI and that ITC breached its duties to plaintiffs by not permitting them to redeem the note and trust deed, thereby destroying plaintiffs' interest in the property, and by engaging in a course of conduct to frustrate tender. Plaintiffs cite no authority in support of their contentions; therefore, they have waived this issue for review.

Next, plaintiffs contend that their third amended complaint adequately states a cause of action for tortious interference with contract.

■ The elements of tortious interference with contract are: (1) the existence of a valid and enforceable contract between plaintiff and another; (2) defendant's awareness of this contract; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by defendant's wrongful conduct; and (5) damages. *Girsberger v. Kresz*, 261 Ill. App. 3d 398, 633 N.E.2d 781 (1993).

Plaintiffs assert that commencing in February 1987, ITC engaged in a "concerted and intentional course of conduct to interfere with and to subvert Plaintiffs' contractual rights under the Note and Trust Deed." Plaintiffs have not alleged any facts to show that ITC intentionally induced the *purchaser*, with whom plaintiffs contracted to sell the property, to breach their obligation to the plaintiffs. The record shows that the purchaser ceased making payments and was in default under its contract with plaintiffs as of October 1986. Thus, plaintiffs have not adequately pleaded a cause of action for tortious interference with contract.

■ Finally, plaintiffs contend that the trial court erred in excluding evidence of ITC's alleged "self-dealing" by deeming certain correspondence to be "settlement negotiations." Plaintiffs fail to cite to any page in the record where the trial court made such a determination and, therefore, have waived this issue for review.

For the reasons stated above, we therefore affirm the judgment of the trial court and remand this matter to the trial court for a hearing limited to the determination of any monies which remain due

and owing to the respective parties as a result of the certificate of error proceedings.

Affirmed and remanded, with instructions.

BUCKLEY and WOLFSON, JJ., concur.