[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15934

_____

D.C. Docket No. 6:11-cv-00734-ACC-GJK

BANK OF AMERICA, NA,

Plaintiff - Appellee,

versus

ROBERT G. DELLO RUSSO,

Defendant - Appellant,

STEPHEN ROMINGER,

Defendant.

_____ _____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 6, 2015)

Before MARCUS, JILL PRYOR and EBEL,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

The district court granted summary judgment in favor of Bank of America enforcing a guaranty provided by Robert Dello Russo.  On appeal, Mr. Dello Russo argues that questions of fact pertaining to his affirmative defenses preclude summary judgment.  After careful consideration and with the benefit of oral argument, we affirm the district court's judgment.

I.

A.

A group of manufacturers (collectively, the "American Companies") borrowed a total of $21 million from Fifth Third Bank in a series of three notes (collectively, "the loan").  Pursuant to the terms of the loan, Fifth Third Bank had a lien upon and security interest in the collateral, which was nearly all of the American Companies' assets.  Additionally, Mr. Dello Russo, a director and investor in the American Companies, provided a personal guaranty (the "guaranty") to Fifth Third Bank, in which he agreed to "absolutely, unconditionally, irrevocably, and continually guarantee[] . . . the full, prompt, and faithful payment and performance" of up to $5.95 million under two of the notes that made up the loan.  *See* Amended and Restated Guaranty §§ 1.(a), 1.(b).  The guaranty required that, "[i]n the event of any Default" by the American Companies, "on demand" by Fifth Third Bank, Mr. Dello Russo was to "pay and perform all" of his obligations under the guaranty.  *Id.* § 2.

2

The American Companies found themselves in financial distress, losing millions of dollars a year, and had difficulty paying Fifth Third Bank and other creditors.  According to Mr. Dello Russo, Fifth Third Bank asked him to provide funding to the American Companies to keep them afloat and in return promised to credit the funding against the amount he owed on the guaranty.  Mr. Dello Russo testified that, based on this promise, he opened up lines of credit, provided cash to the American Companies, and paid off obligations, such as rent and taxes, that the American Companies owed to third parties.  All told, Mr. Dello Russo estimates he provided ten million dollars in funding to the American Companies.

Even with the funding from Mr. Dello Russo, the American Companies' financial difficulties continued, and they were unable to make timely payments to Fifth Third Bank.  The American Companies, Mr. Dello Russo, and Fifth Third Bank entered into a series of forbearance agreements in which the bank agreed temporarily not to exercise its remedies under the loan.  As part of the forbearance agreements, Mr. Dello Russo reaffirmed that "all obligations . . . shall remain guarantied" and represented that he had no defenses under the guaranty.  *See, e.g.*, April 28, 2010 Forbearance Agreement § 10.  He also expressly "waive[d], discharge[d] and forever release[d]" Fifth Third Bank, as well as its successors and assigns, from any defenses he had against them relating to the guaranty.  *See, e.g.*, *id.* § 14.

3

After the forbearance period expired, Fifth Third Bank sold the American Companies' loan and Mr. Dello Russo's guaranty, along with other loans, as part of a portfolio to Bank of America.  Because most of the loans in the portfolio were in default, Bank of America purchased them at a discount compared to the total amount owed collectively on the loans.  Less than a week after Bank of America acquired the loan, the American Companies advised Bank of America that they needed additional cash to continue operating and asked the bank to loan more money.  Bank of America refused and, instead, exercised its right to accelerate the loan and declared due all amounts payable from the American Companies.  When the American Companies failed to pay, Bank of America demanded payment on Mr. Dello Russo's guaranty.  He refused to pay, claiming he had already satisfied his guaranty by funding the American Companies under his agreement with Fifth Third Bank.

Bank of America exercised its right to sell the American Companies' collateral, which consisted of nearly all of its assets.  The American Companies hired a broker to market the collateral.  The broker identified an investment fund, Blue Wolf, as a prospective purchaser.  Blue Wolf offered to pay $1.5 million for the collateral.  After negotiations with Bank of America, Blue Wolf purchased the collateral for $1.5 million.  After the collateral was sold, the American Companies still owed Bank of America more than $16 million on the loan.

4

B.

Bank of America then filed this diversity lawsuit against Mr. Dello Russo, seeking to collect $5.95 million under the guaranty, as well as costs and attorney's fees.[1]  In his answer, Mr. Dello Russo raised affirmative defenses asserting that (1) he had paid off the guaranty by funding the American Companies; (2) even if the guaranty did not contemplate that he could pay it off by funding the American Companies, there was an accord and satisfaction in which Fifth Third Bank agreed that Mr. Dello Russo's funding of the American Companies satisfied his obligations under the guaranty; and (3) Bank of America failed to sell the collateral in a commercially reasonable manner.  Shortly after discovery opened, Bank of America moved for summary judgment.  The district court granted the motion as to Mr. Dello Russo's affirmative defenses of payment and accord and satisfaction but denied the motion on the commercial reasonableness defense, finding a disputed issue of material issue of fact on that issue.

After completing discovery, Bank of America again moved for summary judgment, this time on the ground that it had acted in a commercially reasonable manner when selling the collateral.  The district court agreed and granted summary judgment.  A $5.95 million judgment against Mr. Dello Russo was entered; the

---

[1] In the lawsuit, Bank of America also sued Stephen Rominger for breach of a separate guaranty related to the American Companies.  The claim against Mr. Rominger is not at issue in this appeal.

judgment also provided that Bank of America could recover its reasonable attorney's fees in an amount to be determined.  Mr. Dello Russo appealed the judgment to this Court, but we dismissed the appeal for lack of jurisdiction on the ground that the district court's judgment was not final because the judgment "expressly reserved jurisdiction to resolve Bank of America['s] claim for attorneys' fees."  Upon return to the district court, Bank of America was awarded attorney's fees, and an amended judgment was entered.  Mr. Dello Russo appealed from the amended judgment.[2]

## III.

We review a district court's grant of summary judgment *de novo,* "viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The parties agree that in this diversity action Illinois law applies based on the choice-of-law provisions in the guaranty and other loan documents.

---

[2] As always, we must first determine whether we have jurisdiction.  When we dismissed Mr. Dello Russo's original appeal, the case returned to the district court for resolution of the attorney's fees issue, but we invited Mr. Dello Russo to "renew [] his appeal following a final judgment."  The district court, again vested with jurisdiction, resolved the attorney's fees issue and entered an amended final judgment.  Because Mr. Dello Russo filed a timely notice of appeal from the amended judgment, we have jurisdiction here.

IV.

A.

Mr. Dello Russo argues he paid off his guaranty by funding the American Companies, even though he could have paid Fifth Third Bank directly. Even accepting as true for the purposes of summary judgment Mr. Dello Russo's testimony that he funded the American Companies because Fifth Third Bank orally promised him that doing so would satisfy his guaranty,[3] the district court correctly granted summary judgment in favor of Bank of America. Mr. Dello Russo has failed to come forward with evidence creating a disputed issue of material fact about whether he performed his obligations under the guaranty because (1) the plain language of the guaranty does not contemplate that Mr. Dello Russo could satisfy the guaranty by funding the American Companies, and (2) there is no evidence that the parties entered into a written agreement modifying the terms of the guaranty to agree that Mr. Dello Russo could perform his obligations by funding the American Companies. Moreover, Mr. Dello Russo's affirmative defense of accord and satisfaction fails because there is no evidence in the record showing that the alleged oral agreement was made to resolve a bona fide dispute about the amount owed on the guaranty.

---

[3] The $10 million in funding Mr. Dello Russo provided greatly exceeded the $5.95 million he owed on the guaranty. One of only a few investors in the American Companies, Mr. Dello Russo stood to lose his entire investment if the companies failed. It is beyond dispute that if his efforts to fund the American Companies had succeeded in saving the companies, he would have benefited; his paying off the guaranty instead would have benefited only the bank.

1.

Under Illinois law, a guaranty is a legally enforceable contract that must be construed according to its terms. *S. Wine & Spirits of Ill. v. Steiner*, 8 N.E. 3d 1065, 1069 (Ill. App. Ct. 2014). Although a guaranty is "strictly construe[d] . . . in favor of the guarantor," when the terms of the guaranty are unequivocal, "it must be construed according to the terms and language used, as it is presumed the parties meant what the language imports." *Id.*

The plain language of the guaranty prohibits Mr. Dello Russo from performing his payment obligations to Fifth Third Bank by funding the American Companies. In the guaranty, Mr. Dello Russo promised that if the American Companies defaulted, he would provide "the full, prompt, and faithful payment and performance when due" under two of the notes that made up the loan. *See* Amended and Restated Guaranty ¶ 1(a), 1(b). Those notes, in turn, stated that the American Companies could perform their obligations only by paying "in lawful money . . . and in immediately available funds" the amount owed under the notes to Fifth Third Bank or, later, Bank of America. *See* Term Note at 1; SOFA Revolving Loan Note at 1. Neither the guaranty nor the notes contemplated that Mr. Dello Russo could simply fund the American Companies to pay off his obligation under the guaranty.

8

Perhaps recognizing that the guaranty did not permit him to pay off his obligations by funding the American Companies, Mr. Dello Russo argues that he and Fifth Third Bank orally agreed to modify the terms of the guaranty such that his funding of the American Companies could constitute payment.  Under Illinois law, however, the guaranty is considered a credit agreement,[4] which may be enforced only if the agreement is in writing and signed by both the debtor and creditor.  *See* 815 Ill. Comp. Stat. 160/2.  Furthermore, a debtor cannot assert a claim, counterclaim, or defense based on an "agreement by a creditor to modify or amend an existing credit agreement" unless the creditor and debtor have signed a writing setting forth the relevant terms of the modification.  *Id.* 160/2, 160/3; *see Teachers Ins. & Annuity Ass'n of Am. v. LaSalle Nat'l Bank*, 691 N.E. 2d 881, 888 (Ill. App. Ct. 1998) ("Because the purported credit agreement to modify or amend the loans is not written and signed by the parties, [Illinois law] bars any counterclaims or defenses based on it.").  Mr. Dello Russo has not come forward with a signed writing in which Fifth Third Bank agreed to modify the guaranty's payment terms such that funding the American Companies could constitute

---

[4] A credit agreement is an "agreement . . . by a creditor to lend money or extend credit . . . not primarily for personal, family or household purposes, and not in connection with the issuance of credit cards."  815 Ill. Comp. Stat. 160/1(1).  Illinois courts have explained that when a guaranty agreement is an integral part of a loan or a condition precedent to a loan, it, together with the loan, constitutes a credit agreement.  *See Bank One, Springfield v. Roscetti*, 723 N.E. 2d 755, 762 (Ill. App. Ct. 1999).  Mr. Dello Russo's guaranty was an integral part of Fifth Third Bank's loan to the American Companies because the terms of the loan contemplated a guaranty from Mr. Dello Russo.

performance under the guaranty; therefore, he cannot enforce the terms of the guaranty that he asserts were modified.

2.

Mr. Dello Russo next argues that there was an accord and satisfaction in which Fifth Third Bank agreed to accept Mr. Dello Russo's funding of the American Companies as fulfilling his obligations under the guaranty. Under Illinois law, an accord and satisfaction "is an agreement between the parties which settles a *bona fide* dispute over an unliquidated claim." *A.F.P. Enters. v. Crescent Pork, Inc.*, 611 N.E. 2d 619, 623 (Ill. App. Ct. 1993). The elements of an accord and satisfaction are:

> (1) an honest dispute between the parties as to the amount due at the time payment was tendered; (2) a tender of payment with the explicit understanding of both parties that it is in full payment of all demands; and (3) an acceptance by the creditor with the understanding that the tender is accepted as full payment.

*Id.* Mr. Dello Russo can point to no evidence in the record showing an honest dispute with Fifth Third Bank about the amount he owed under the guaranty at the time that he funded the American Companies. Instead, the evidence, viewed in the light most favorable to Mr. Dello Russo, shows that Fifth Third Bank proposed that Mr. Dello Russo fund the American Companies as a way to keep the companies afloat, not because of any dispute between Mr. Dello Russo and Fifth Third Bank about the amount he owed under the guaranty. Under these facts, Mr. Dello Russo

10

cannot show there was an accord and satisfaction. *See Choi v. Messer*, 548 N.E. 2d 33, 35-36 (Ill. App. Ct. 1989) (affirming grant of summary judgment where there was no evidence of a bona fide dispute as to the amount owed).

B.

Mr. Dello Russo argues that when Bank of America sold the collateral securing the American Companies' loan, which was substantially all of the American Companies' assets, for $1.5 million, Bank of America failed to conduct the sale in a commercially reasonable manner. Although Mr. Dello Russo challenges the commercial reasonableness of the sale on a variety of grounds, each of his arguments fails.

Upon the American Companies' default on the loan, Bank of America was entitled to take possession of the loan's collateral and "sell, lease, license, or otherwise dispose of any or all of the collateral." 810 Ill. Comp. Stat. 5/9-609(a), 5/9-610(a).[5] However, "[e]very aspect" of Bank of America's disposition of the collateral "including the method, manner, time, place, and other terms, must be commercially reasonable." *Id.* 5/9-610(b). A disposition of collateral is commercially reasonable if it is made "in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." *Id.* 5/9-627(b)(3). The fact that the secured party could have

---

[5] Illinois's statute is modeled on Article 9 of the Uniform Commercial Code.

11

obtained more value if it had disposed of the collateral "at a different time or in a different method . . . is not of itself sufficient to preclude" that the secured party acted in a commercially reasonable manner.  *Id.* 5/9-627(a).  If Bank of America failed to act in a commercially reasonable manner, then Mr. Dello Russo's liability under the guaranty should be reduced by the amount of the proceeds that would have been realized had Bank of America acted in a commercially reasonable manner.  *Id.* 5/9-626(3)(B).

Bank of America acted in a commercially reasonably manner when it relied on an investment broker hired by the American Companies to market the collateral and find a buyer.  The undisputed evidence shows that the broker used a national marketing campaign to identify prospective purchasers for the American Companies' assets.  After the broker identified Blue Wolf as a potential purchaser that was willing to purchase the collateral for $1.5 million, Bank of America negotiated directly with Blue Wolf to try to increase the purchase price.  But, given the financial distress of the American Companies, Blue Wolf was unwilling to pay any more than $1.5 million; lacking any other prospective purchasers willing to pay more, Bank of America sold the collateral to Blue Wolf for $1.5 million.

Although Mr. Dello Russo argues it was unreasonable for Bank of America to rely on a broker hired by the American Companies to sell the assets, the involvement of the debtor company in the sale of its assets is commercially

12

reasonable because the company "has access to confidential information and its officers and directors are also in the best position to market the company for sale, or at the very least, advise the secured lender on how to market the company." *Edgewater Growth Cap. Partners LP v. H.I.G. Cap., Inc.*, 68 A.3d 197, 213-14 (Del. Ch. 2013) (applying Illinois law).

Mr. Dello Russo also contends that it was not commercially reasonable for Bank of America to rely on the American Companies and their broker to identify prospective purchasers because the American Companies' executives had a conflict of interest in that they were more interested in trying to secure jobs with the purchaser than securing the maximum price for the collateral. The only evidence Mr. Dello Russo has produced to show such a conflict of interest is that Blue Wolf hired one of the American Companies' executives to continue working after the acquisition. This evidence, without more, does not support an inference that the American Companies' executives either intended or actually arranged to sell the collateral for less than its fair market value. Instead, Mr. Dello Russo relies on speculation, which is insufficient to create a disputed issue of material fact. *See Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (internal quotation marks omitted)).

13

Additionally, Mr. Dello Russo argues that Bank of America failed to act in a commercially reasonable manner because, he claims, it was uninterested in selling the collateral for the highest possible price since it expected to collect on the guaranty. In his speculation, Mr. Dello Russo ignores that the American Companies owed more than $17 million on their loan — meaning that even if Bank of America expected to collect in full on Mr. Dello Russo's $5.95 million guaranty, the bank would not collect the full amount the American Companies owed. Even though Bank of America purchased the loan and guaranty from Fifth Third Bank at a discount, Bank of America still had an incentive to maximize its profit, and Mr. Dello Russo has not come forward with any evidence to the contrary. Mr. Dello Russo also ignores the undisputed evidence that Bank of America tried, albeit unsuccessfully, to negotiate with Blue Wolf for a higher price for the collateral.

Mr. Dello Russo next attacks the sale of the collateral as not commercially reasonable because, he contends, he was not given proper notice of the sale. Although Bank of America sent notice to Mr. Dello Russo, pursuant to the guaranty, that it would sell the collateral under an Article 9 sale, Mr. Dello Russo claims that the collateral was actually sold by the American Companies in a short sale, rendering the notice deficient and not commercially reasonable. Mr. Dello Russo's assumption that the American Companies, not Bank of America, sold the

14

collateral to Blue Wolf is unsupported by evidence.  Instead, the undisputed evidence shows that Bank of America sold the collateral to Blue Wolf after negotiations between the two parties.  Because Mr. Dello Russo has adduced no facts to support his contention that the American Companies, not Bank of America, sold the collateral, his argument fails.

Finally, Mr. Dello Russo argues that the sale was not commercially reasonable because record evidence shows that the $1.5 million price was too low. But "mere inadequacy of price in the absence of fraud, mistaken or illegal practice does not vitiate the sale." *Nat'l Boulevard Bank of Chicago v. Jackson*, 416 N.E. 2d 358, 361 (Ill. Ct. App. 1981); *see also Voutiritsas v. Intercounty Title Co. of Ill.*, 664 N.E. 2d 170, 179 (Ill. Ct. App. 1996) ("[P]rice alone does not establish commercial reasonableness . . . .").  Even assuming, *arguendo*, that the sale price for the collateral was too low, this fact would be insufficient to show that the sale process was commercially unreasonable.[6]

V.

We conclude that Bank of America was entitled to summary judgment in this case.  Accordingly, we affirm.

**AFFIRMED.**

---

[6] Mr. Dello Russo also argues that the district court erred by excluding the testimony of his valuation expert regarding the American Companies' collateral.  We need not address this issue because, even assuming expert testimony that the collateral was worth in excess of $1.5 million, Mr. Dello Russo has failed to show that Bank of America's sale of the collateral was commercially unreasonable.

15