IRVING TURK *et al.*, Plaintiffs-Appellants, v. WRIGHT & BABCOCK, LTD., *et al.*, Defendants-Appellees.

Third District   No. 3—87—0866

Opinion filed August 23, 1988.—Rehearing denied October 13, 1988.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Maurice L. Davis, of counsel), for appellants.

Stephen R. Swofford and George W. Spellmire, Jr., both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Debra A. Winiarski, of counsel), for appellees.

JUSTICE WOMBACHER delivered the opinion of the court:

In September 1982, the plaintiffs, Irving, Elizabeth and Mark

Turk, and Will County Produce Company, Inc., a corporation in which the plaintiffs were sole shareholders, engaged the defendants, Wright & Babcock, Ltd., to represent them in the sale of the business.

An agreement to sell was arrived at by the plaintiffs and prospective buyers, Thomas Przetacznik and William Herchenbach, which provided for a sale price of $410,000 plus an amount to be determined by the taking of an inventory. Part of the purchase price was to be secured by a security agreement covering the inventory and tangible assets. The buyers were to form a nominee corporation to take title to the assets of the business.

It was the buyers' intention to organize a corporation named "TMP Incorporated" to acquire the assets in the transaction. The name "TMP Incorporated" was not available for use in Illinois; the corporation ultimately came into existence named "TP Incorporated."

At the time of the closing, the documents involved in the sales transaction listed the name of the acquiring corporation as TMP Incorporated. A financing statement was prepared by the defendants which listed the debtors as Thomas Przetacznik, William Herchenbach and TMP Incorporated. Thomas Przetacznik signed the statement. The statement listed the machinery and fixtures of the business, as well as the inventory, as collateral. A separate security agreement was never prepared or executed.

A fire destroyed the tangible assets of the business on August 19, 1983. TP Incorporated instituted bankruptcy proceedings. The plaintiffs filed a claim in the proceedings as unsecured creditors. They had received $80,000 as of September 30, 1985. They expected to recover a total of $200,000 in their status of unsecured creditor. The unpaid principal owing to the plaintiffs under the sale agreement was $834,528.79.

The plaintiffs filed a malpractice action against the defendants to recover the amounts due to them under the sale agreement. The complaint alleged that the defendants failed to create a valid security interest; failed to require in the sale agreement that the buyers maintain insurance; and failed to require in the sale agreement that the buyers name the sellers as additional insureds. On December 22, 1987, the plaintiffs' amended complaint was dismissed upon the trial court's allowance of the defendants' motion. The trial court held that a valid security interest had arisen and the financing statement was valid. The court also found that the sale contract did provide for maintenance of insurance coverage. Further, had the agreement provided that the sellers be named as additional insureds on the buyers' insurance policies, a different result would not have occurred.

The plaintiffs appeal the dismissal, contending that the financing statement, without an executed security agreement, does not create a security interest. Furthermore, the plaintiffs contend that the defendants failed to require that the sellers maintain insurance covering the tangible property, with the plaintiffs named as additional insureds.

■ The Illinois Uniform Commercial Code (Ill. Rev. Stat. 1985, ch. 26, par. 1—101 *et seq.*) sets out a comprehensive scheme for the regulation of security interests in personal property and fixtures. Article 9 applies to any transaction (regardless of its form) which is intended to create a security interest in personal property. (Ill. Rev. Stat. 1985, ch. 26, par. 9—102.) Substance rules over form and courts will look through a transfer absolute in form to find a secured transaction if that was the real intent of the parties. Oral agreements to create a security interest have been found valid where other documents relating to the transaction evidenced the intent of the parties. (See *Wambach v. Randall* (7th Cir. 1973), 484 F.2d 572.) In *In re Numeric Corp.* (1st Cir. 1973), 485 F.2d 1328, the court held that a financing statement, together with a corporate resolution of the debtor referring to the existence of a security interest in equipment, constituted a security agreement in the absence of a written document.

■ In the instant case, the sale agreement and financing statement contained a full listing of the collateral secured. The contract included extensive provisions of security. It provided the sellers purchase money security rights, including physical possession of the business' capital stock. Furthermore, the plaintiffs' verified complaint admitted an intent to obtain security. Clearly, the parties intended for the sale to entail a security interest in the assets of the business; under the law the question of whether a security agreement exists is one of intent and the absence of a separate and written agreement is not controlling.

Next we turn to the validity of the financing statement. The plaintiffs assert on appeal that the financing statement was invalid inasmuch as it listed an erroneous corporate name as the debtor. The sale transaction was closed on November 12, 1982. On November 23 TP Incorporated came into existence. Upon closing, the assets were initially held by the individual debtors. The financing statement was filed on December 10 and named Thomas Przetacznik and William Herchenbach as well as TMP Incorporated (the anticipated name of the acquiring corporation) as debtors. Przetacznik signed the statement in his capacity as an officer of the corporation.

■ There is precedent that the names of the corporate principals on the financing statement are sufficient to perfect a security in-

terest. The court in the case of *In re Pubs, Inc.* (7th Cir. 1980), 618 F.2d 432, held that a financing statement, naming individual officers as debtors rather than their corporation, was valid.

Further, the issue of the validity of the financing statement is resolved at its threshold by section 9—402 of the Illinois Uniform Commercial Code (Code), which reads in pertinent part:

"A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer." (Ill. Rev. Stat. 1985, ch. 26, par. 9—402(7).)

Pursuant to the Code, the plaintiffs were not required to file a new financing statement after Mr. Przetacznik and Mr. Herchenbach incorporated TP Incorporated. The financing statement, which had listed them as individual debtors, remained valid after the transfer of the collateral to the corporate entity.

We recognize that the correct designation of the debtor's name is of obvious importance because this is the basis for the alphabetical indexing of the financing statement. Furthermore, the purpose of the notice provision is to apprise creditors that others may have a security interest in the subject collateral. We conclude that the subject financing statement properly identified the debtors and was valid.

■ Next, we consider the plaintiffs' contention that the defendants failed to exercise reasonable care in drafting the sale agreement inasmuch as it contained no provision requiring the buyers to maintain insurance and name the seller as an assured.

Initially we note that paragraph 15(E) of the sale agreement required the buyers to assume the payments on the plaintiffs' current general liability policy. The fact that the agreement did not require the buyers to maintain their own insurance is immaterial under the facts of this case. The defendants did provide in the agreement that there be insurance to protect the plaintiffs in the event of casualty loss. Further, the record admits the fact that the buyers had an insurance policy covering the loss which resulted in proceeds to the bankrupt's estate. The plaintiffs would be entitled to the same amount of insurance proceeds as a beneficiary of the insurance policy as they would by way of their security interest in the collateral.

Further arguments raised initially upon appeal shall not now be considered inasmuch as they do not address matters relied upon by the trial court in its disposition of the motion to dismiss. Due to our affirmance of the trial court's finding that the plaintiffs held a security interest in the assets of the business, and provisions for insurance were contained in the agreement, we need not pass upon whether the

complaint stated a claim for professional malpractice.

For all of the foregoing reasons the dismissal order of the circuit court of Will County is affirmed.

Affirmed.

HEIPLE and BARRY, JJ., concur.