In re PARAMOUNT INTERNATIONAL,
INC., Debtor.

PARAMOUNT INTERNATIONAL,
INC., Plaintiff,

v.

FIRST MIDWEST BANK,
N.A., Defendant.

Bankruptcy No. 91 B 27680.
Adversary No. 92 A 1001.

United States Bankruptcy Court,
N.D. Illinois, E.D.

May 6, 1993.

Patrick S. Munzer, Leonora L. Shaw,
Ross & Hardies,. Chicago, IL, representing
Paramount International, Inc., debt-
or/plaintiff.

Marc O. Beem, Miller, Shakman, Hamilton & Kurtzon, Chicago, IL, representing First Midwest Bank, N.A., defendant.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on Count I of the complaint[1] filed by Paramount International, Inc. (the "Debtor") to determine the validity, priority and extent of the lien of First Midwest Bank, N.A. (the "Creditor") in the Debtor's accounts receivable. The Debtor contends that the Creditor's filed financing statement became seriously misleading within the meaning of 810 ILCS 5/9–402(7) after a subsequent change in the Debtor's corporate name. Because the Creditor did not file a new financing statement or any amendments thereto within four months, the Debtor now seeks to avoid the security interest of the Creditor in all accounts receivable of the Debtor arising after April 30, 1991, pursuant to 11 U.S.C. § 544(a). The Creditor contends that the Debtor's change of name from Paramount Attractions, Inc. to Paramount International, Inc. was insignificant and did not render the filed financing statement seriously misleading.

For the reasons set forth herein, the Court having considered the evidence, pleadings and exhibits, does hereby deny the relief sought under Count I. The Court holds that the Debtor's corporate name change did not render the filed financing statement seriously misleading or necessitate a filing by the Creditor of a new or amended financing statement under 810 ILCS 5/9–402(7) (hereinafter referred to as "section 9–402(7)").

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(K).

## II. FACTS AND BACKGROUND

Many of the relevant material facts of this matter are undisputed. Most of the parties' exhibits were stipulated to be admitted into evidence. The Creditor was a secured lender to the Debtor under a loan and security agreement granting liens on all of the Debtor's accounts receivable and other real and personal property. The original loan and security agreement were dated November 15, 1990. *See* Defendant's Exhibit No. 1. Liens on the Debtor's accounts receivable were perfected by a filed financing statement at the appropriate office of the Uniform Commercial Code Division of the Illinois Secretary of State on November 26, 1990. *See* Defendant's Exhibit No. 9. At those times, the Debtor was an Illinois corporation named Paramount Attractions, Inc. The address of the Debtor contained in both the loan and security agreement and the filed financing statement was 3444 Dundee Road, Northbrook, IL 60062.

On December 31, 1990, the Debtor filed Articles of Amendment with the Illinois Secretary of State, Corporation Division, changing the Debtor's corporate name to Paramount International, Inc. *See* Plaintiff's Exhibit No. 2. No other change or transfer occurred in the nature of a merger, consolidation or asset transfer to a newly created entity. Shortly thereafter, on or about January 8, 1991, the Debtor filed with the Illinois Secretary of State, Corporation Division, an application to use its former name, Paramount Attractions, Inc., as an assumed corporate name. *See* Defendant's Exhibit No. 10. The Debtor thereafter transacted business using both names as well as its trade or "street" name "Paramount."

The Creditor never filed a new financing statement or any amendment to its existing financing statement reflecting the Debtor's change in its corporate name. The parties entered into subsequent amendments to the original loan documents by agreements dated May 30, 1991, and June 14, 1991 (Defendant's Exhibit Nos. 2 and 3 respectively),

---

**1.** The parties have agreed to dismiss Counts II and III of the complaint.

which reference the name change of the Debtor, evidencing knowledge by the Creditor of the name change. On December 30, 1991, the Debtor filed a Chapter 11 petition. Subsequently, the Debtor proposed and obtained confirmation of a liquidating plan.

██ The reorganized Debtor seeks to utilize the avoidance provisions of section 544(a). Pursuant to 11 U.S.C. § 1107(a), a debtor in possession generally has the rights and powers of a trustee under Chapter 11 which includes the trustee's rights and powers as a hypothetical lien creditor under section 544(a). Section 544(a) conveys upon the trustee, upon the filing of the petition and without regard to any knowledge of the trustee, those powers which state law would allow to a hypothetical creditor of the debtor who, as of the commencement of the case, had completed the legal processes for perfection of a lien upon property of the debtor available for satisfaction of his claim against the debtor. Thus, improperly perfected security interests in a debtor's property are vulnerable to the rights of a debtor in possession as lienor under section 544(a). The Debtor seeks a determination that the Creditor's security interest encumbering its receivables became unperfected pursuant to the provisions of section 9–402(7), four months after the Debtor's change in name because a new or an amended financing statement was not filed. The heart of the Debtor's cause of action is that the filed financing statement became seriously misleading as a result of the Debtor's name change.

### III. DISCUSSION

██ Under section 544(a), the Debtor, notwithstanding its knowledge of the name change, stands in the position of a hypothetical lien creditor. *See In re Tyler*, 23 B.R. 806, 809 (Bankr.S.D.Fla.1982). The "strong arm" powers invoked by the Debtor are limited and subject to such matters of record giving at least constructive notice. *Belisle v. Plunkett*, 877 F.2d 512, 514 n. 2 (7th Cir.1989), *cert. denied*, 493 U.S. 893, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989); *In re Richardson*, 75 B.R. 601, 605 (Bankr.

C.D.Ill.1987). Bankruptcy courts normally look to state law to determine interests in property and the perfection of liens therein. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). The continued perfection of the disputed lien at issue is determined by Illinois law. The Court must determine whether the Creditor's filed financing statement, not subsequently amended, was sufficient to continue to perfect its security interest in the Debtor's subsequent accounts receivable. "The purpose of the financing statement is to put third parties on notice that a security interest may exist in certain property and that they should contact the parties to obtain details." *In re Little Brick Shirthouse, Inc.*, 347 F.Supp. 827, 829 (N.D.Ill.1972).

In setting forth the requirements of financing statements, Section 9–402(7) of the Uniform Commercial Code as adopted in Illinois provides:

(7) A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or names of partners. Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than 4 months after the change, unless a new appropriate financing statement is filed before the expiration of that time. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.

810 ILCS 5/9–402(7).

██ The second sentence is the operative portion of the statutory text at issue. The ultimate question is whether the filed financing statement showing the name "Paramount Attractions, Inc." became seriously misleading absent a refiling under the changed corporate name "Paramount International, Inc.". The statute's goal sought

to be achieved is obvious. Section 9–402 adopts a notice system of filing and thus, the validity of a financing statement depends on its ability to give notice of the security interest that exists to other creditors. *See In re Rieber,* 740 F.2d 10 (8th Cir.1984). Hence, when a debtor's name is erroneously listed on a financing statement, the dispositive question in assessing whether a security interest is perfected is whether a reasonable prudent subsequent creditor would likely discover the prior security interest. *In re Swati, Inc.,* 54 B.R. 498, 501 (Bankr.N.D.Ill.1985).

The term "seriously misleading" is neither a defined term nor otherwise discernable in its precise application from the text of the statute. In short, neither the statute nor any cited case clearly answers the ultimate question—did the Debtor's name change from "Paramount Attractions, Inc." to "Paramount International, Inc." render the filed financing statement under the former name seriously misleading?

Whether a financing statement is seriously misleading under section 9–402(7) is a question of fact. *In re West Coast Foods Sales, Inc.,* 637 F.2d 707, 710 (9th Cir. 1981); *In re Vital Breathing Products, Inc.,* 98 B.R. 97, 100 (Bankr.N.D.Ga.1988); *In re Darling Lumber, Inc.,* 56 B.R. 669, 673 (Bankr.E.D.Mich.1986). The question of whether a filed financing statement becomes seriously misleading depends on whether a reasonably diligent searcher would discover the financing statement. *In re Wardcorp, Inc.,* 133 B.R. 210, 213 (Bankr.S.D.Ind.1990). "When a debtor's name is incorrectly listed on a financing statement, the test is whether a reasonable search under the debtor's true name would reveal the filing, and if so, then the person searching is on notice to inquire further to discover the debtor's correct identity." *In re Bass Mechanical Contractors, Inc.,* 84 B.R. 1009, 1021 (Bankr.W.D.Ark.1988); *see also In re Dakota County Store Foods, Inc.,* 107 B.R. 977, 991 (Bankr.D.S.D.1989). Application of the test has resulted in two general lines of case law—those that strictly apply the statute and require amended or new filings for even minor name changes, and those taking a more liberal

view. Such divergent views result from a lack of definition of the term "seriously misleading" or any other clear parameters to aid in determining when a deviation from the exact debtor's name is fatal.

The principal case relied on by the Debtor is *In re Meyer–Midway, Inc.,* 65 B.R. 437 (Bankr.N.D.Ill.1986). There, the court held that the filing of a financing statement containing the names of pre-merger borrowers became seriously misleading post-merger and not effective under section 9–402(7). The lender had obtained separate security interests from J. Meyer & Co. and Midway Tobacco Co., two separate Illinois corporations operating out of the same premises, who merged the following year to form Meyer–Midway, Inc., a Delaware corporation. The lender did not file a new or amended financing statement for the new corporate entity. *Meyer–Midway* noted that some courts have ignored irregularities in names as immaterial and not misleading. *See e.g., In re Excel Stores, Inc.,* 341 F.2d 961 (2d Cir.1965) ("Excel Department Stores" rather than "Excel Stores, Inc."); *In re Platt,* 257 F.Supp. 478 (E.D.Pa.1966) ("Platt Fur Co." rather than "Henry Platt"); *In re Forehand,* 121 B.R. 892 (Bankr.N.D.Fla.1990) ("Lake Jackson Hardware", a trade name, held effective notwithstanding change of trade name to "Lake Jackson Lawn & Garden"). *Id.* at 442. *Meyer–Midway,* however, followed other courts which take a much stricter view. *See In re Lintz West Side Lumber, Inc.,* 655 F.2d 786 (7th Cir.1981) (filing in the name of the individuals who were principals of the corporate debtor was found to be misleading even though the corporate name began with the individual's last name, and the community was so small that it was unlikely anyone could be misled); *Whirlpool Corp. v. Bank of Naperville,* 97 Ill.App.3d 139, 52 Ill.Dec. 215, 421 N.E.2d 1078 (2d Dist.1981) ("Carpet Castle" rather than "Carpet Castle, Inc." found seriously misleading); *First Agri Services, Inc. v. Kahl,* 129 Wis.2d 464, 385 N.W.2d 191 (Ct.App.1986) ("Gary and Dale Kahl" rather than "Kahl Farms" found seriously misleading).

In *Lintz,* the Seventh Circuit affirmed the bankruptcy court's decision that the filing of a financing statement in the name of the owners of the corporation, not in the corporation's name itself, was seriously misleading. Subsequent creditors had to rely on a government official to conduct an exhaustive search in order to locate the financing statement. In addition, *Lintz* distinguished the holding in *Platt* noting that "Platt Fur Co." was an unregistered trade name for the business of Henry Platt, and not a licensed corporate entity. 655 F.2d at 791 n. 7.

Many courts have ignored immaterial irregularities in financing statements which are not misleading. *See In re Glasco, Inc.,* 642 F.2d 793 (5th Cir.1981) (financing statement in name of "Elite Boats, Division of Glasco, Inc." effective as to "Glasco, Inc."); *In re Radtke Heating & Sheet Metal Co., Inc.,* 95 B.R. 84, 85 (N.D.Ill.1989) (financing statement in name of "Radtke Heating & Sheet Metal Co." held to perfect security interest in assets of "Radtke Heating & Sheet Metal Co., Inc."); *In re Bass Mechanical Contractors, Inc.,* 84 B.R. 1009 (Bankr.W.D.Ark.1988) (financing statement in name of "Bass Plumbing, Heating and Cooling, Inc.: effective as to "Bass Mechanical Contractors, Inc."); *In re Sounds Distributing Corp.,* 42 B.R. 274 (Bankr. W.D.Pa.1984) (financing statement in name of "Norton L. Kolinsky, d/b/a Sounds Distributors" effective as to "Sounds Distributing Corp."); *Turk v. Wright & Babcock, Ltd.,* 174 Ill.App.3d 139, 124 Ill.Dec. 102, 528 N.E.2d 993 (3d Dist.1988), *appeal denied,* 124 Ill.2d 562, 129 Ill.Dec. 156, 535 N.E.2d 921 (1989) (financing statement naming corporate shareholders and "TAMP Corporation" effective as to "T Corporation").

A different situation occurred in *In re Seco, Inc.,* 64 B.R. 368 (Bankr.C.D.Ill.1986). A financing statement was filed using the debtor's original name Seco, Inc. It was merged into Right Way Chemical of Georgia, Inc., but within four months, the surviving corporation changed its name back to Seco, Inc., albeit a Georgia, rather than an Ohio corporation. The *Seco* court held that those facts did not effectively render the filed financing statement seriously misleading.

■ Filing under a debtor's trade name is not per se insufficient to perfect a security interest where the trade name is substantially similar to the true legal name of the debtor. *In re Swati, Inc.,* 54 B.R. 498, 501 (Bankr.N.D.Ill.1985). Where the trade name differs materially from the debtor's true name, a financing statement filed under the trade name is defective. *Id. Swati* held that filing under the trade name of "King's Plaza Motel" rather than the legal corporate name of "Swati, Inc." was inadequate to perfect a security interest. *Id.* at 502. *Swati* notes that filing under a trade name that is not sufficiently similar to the debtor's actual name creates the potential for either deception by a dishonest debtor or for honest mistake. *Id.* at 503. The court reasoned that approving filing under names other than a debtor's legal name would frustrate the Uniform Commercial Code policy of certainty in commercial lending activities. *Id.*

■ In light of such divergent views among the case law, the Court is of the opinion that evidence of actual financing statement searches and the results produced is very persuasive in cases such as this where the name change involves but a single word, and where the debtor continues to conduct business under both its new and former names, in accord with applicable legal requirements. The evidence submitted by the Creditor included the testimony of a paralegal with the Creditor's attorney's law firm. She performed a computer data base search of the records of the Illinois Secretary of State, Uniform Commercial Code Division. She made a search under the name "Paramount" which turned up over 180 documents. She also searched "Paramount" and "Dundee" which produced several filings. The filed financing statement of the Creditor was included in both those search retrievals. Such testimony is significant because it is the only evidence to show the results of actual searches made.

No evidence was submitted to show what results, if any, a search would produce of the Debtor's new corporate name. The Court disagrees with the Debtor's argument concluding that a prudent creditor would limit a search to the new corporate name. After all, the Debtor admittedly used several street names, including "Paramount," and at all relevant times was legally authorized to transact business under its former corporate name, that contained in the Creditor's filed financing statement.

In addition, William Goldsmith, former president and chief executive officer of the Debtor also testified. After the Debtor changed its name, it applied for permission to and used its former corporate name as an assumed name or street name so as not to lose its old customer and client base. He further testified that the Debtor had transacted business under various street names including "Paramount," "Paramount Productions," and "Paramount Marketing Services". After the name change, the Debtor did not solely transact business under and was not known only by its new name. He further testified that the Debtor's customers and clients frequently referred to the Debtor as "Paramount." Some of the Debtor's invoices were sent out referencing only the name of "Paramount" for the specialty advertising phase of the Debtor's former business.

The Debtor argues that the fact that the Creditor subsequently knew of the name change and failed to file an amended or new financing statement is evidence of a lack of good faith as required by Section 1–203 of the Uniform Commercial Code as found in *In re Kalamazoo Steel Process, Inc.*, 503 F.2d 1218 (6th Cir.1974), such failure to file a new or amended financing statement showed a lack of fair dealing. The Court rejects this argument for several reasons. First, there is no objective evidence of any lack of good faith by the Creditor in any of its dealings with the Debtor. The Creditor's failure to refile could be attributable to mere oversight or negligence on its part for which, had the name change been more significantly different, its failure would result in a different decision here. Second, the concern of the court in *Kalamazoo Steel Process* with the integrity of the notice filing system inherent in Article 9 of the Uniform Commercial Code has been met here. The only evidence adduced at trial of actual searches performed revealed the Creditor's filed financing statement both times. Third, the knowledge of either the Debtor or the Creditor of the name change is not outcome determinative or a relevant factor mentioned in the statutory text. What is important is whether the financing statement on file is sufficient to place other creditors on notice.

The Court finds that a reasonably diligent searcher would discover the Creditor's filed financing statement, and therefore the financing statement was not seriously misleading. Other creditors of the Debtor were aware of its various trade or street names which were used from time to time. Some invoices and checks used by the Debtor identified the company as "Paramount." Accordingly, the Court finds that under these facts wherein the Debtor simultaneously used its former corporate name as an authorized trade or street name under which it was doing business, concurrently with its new name, that the failure of the Creditor to file a new financing statement did not render the extant filing seriously misleading. This result is further supported by the fact that the filed financing statement at all times referenced the Debtor's business address in Northbrook, Illinois, at which it transacted business both at and after the formal corporate name change. Thus, the Creditor has a valid perfected security interest in all of the Debtor's accounts receivable. Judgment is entered in favor of the Creditor on Count I of the complaint.

## IV. CONCLUSION

For the reasons set forth herein, the Court hereby denies the relief sought by the Debtor under Count I. The Court holds that the Debtor's corporate name change did not render the filed financing statement seriously misleading or necessitate the filing of a new or amended financing statement under 810 ILCS 5/9–402(7).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.