In re Jerome M. KOHOUT and Sharon L. Kohout, Debtors.

Jerome M. Kohout and Sharon L. Kohout, Plaintiffs,

v.

United States of America Department of the Treasury–Internal Revenue Service, Defendant.

Bankruptcy No. 97–40146. Adversary No. 97–4125.

United States Bankruptcy Court, N.D. Ohio.

Feb. 11, 1999.

Andrew W. Suhar, Youngstown, OH, for plaintiffs/debtors.

William M. Kostak, Trial Attorney, United States Department of Justice, Tax Division, Washington, DC, for defendants/U.S.A., Dept. of the Treasury–IRS.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

This cause is before the Court on the cross-motions for summary judgment and respective responses of Jerome M. and Sharon L. Kohout ("Plaintiffs") and the United States of America Department of the Treasury–Internal Revenue Service ("Defendant"). Plaintiffs filed an adversary complaint under 11 U.S.C. § 547(b) seeking avoidance of alleged preferential transfers of their property which were levied upon by Defendant within the 90–day period preceding the filing of their bankruptcy petition. The parties have filed a stipulation of fact with the Court and there is no dispute as to the material and operative facts supporting this cause. Thus, the Court is left only to decide whether either party is entitled to summary judgment as a matter of law. This is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(E), (F) and (K). The following constitutes the Court's findings and conclusions pursuant to FED. R.BANKR.P. 7052.

## STANDARD OF REVIEW

The procedure for granting summary judgment is found in FED.R.CIV.P. 56(c), made applicable to this proceeding through FED.R.BANKR.P. 7056, which provides in part that

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is not appropriate if there is a material dispute over the facts, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit has recognized that *Liberty Lobby, Celotex* and *Matsushita* effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). In responding to a proper motion for summary judgment, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street*, 886 F.2d at 1479 (quot-

ing *Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must introduce more than a scintilla of evidence to overcome the summary judgment motion. *Street,* 886 F.2d at 1479. It is also not sufficient for the nonmoving party merely to "show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street,* 886 F.2d at 1479. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

This line of cases emphasizes the point that when one party moves for summary judgment, the nonmoving party must take affirmative steps to rebut the application of summary judgment. Courts have stated that:

> Under *Liberty Lobby* and *Celotex,* a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict, and if the opposing party is thereafter unable to demonstrate that he can do so, summary judgment is appropriate. "In other words, the movant could challenge the opposing party to 'put up or shut up,' on a critical issue [and] . . . if the respondent did not 'put up,' summary judgment was proper."

*Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992) (quoting *Street,* 886 F.2d at 1478).

## DISCUSSION

### A. Facts

This adversary action arises out of a dispute whether levies by Defendant against Plaintiffs' individual retirement accounts ("IRAs") and wages within the 90-day period preceding the filing of Plaintiffs' petition in bankruptcy may be avoided as preferential transfers. The parties stipulated to the following facts for purposes of this proceeding:

1. The plaintiffs, Jerome M. Kohout and Sharon L. Kohout, filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code on January 23, 1997.

2. The date ninety days prior to the filing of the plaintiff's [sic] petition in bankruptcy was October 25, 1996.

3. On November 12, 1996, the Internal Revenue Service filed a Notice of Federal Tax Lien with regard to plaintiffs' tax liability, including interest and penalties, for the years 1982, 1983 and 1984 in the amount of $74,999.57 (Exhibit "A").

4. On the following dates, the Internal Revenue Service levied upon the plaintiffs' individual retirement accounts and received the corresponding amounts. Said amounts were received by the Internal Revenue Service prior to its filing of the Notice of Federal Tax Lien with the Recorder of Mahoning County, Ohio, on November 12, 1996:

| | |
|---|---|
| November 4, 1996 | $ 5,022.07 |
| November 5, 1996 | $ 4,438.39 |
| November 5, 1996 | $ 4,438.39 |
| November 8, 1996 | $ 3,545.77 |
| November 8, 1996 | $ 3,671.82 |
| Total: | $21,116.44 |

5. On the following dates the Internal Revenue Service levied upon additional individual retirement accounts held by the plaintiffs and received the corresponding amounts. The checks received by the Internal Revenue Service from the entity which was levied upon, Federal Kemper Life Insurance Company, were dated November 4, 1996, prior to the filing of the Notice of Federal Tax Lien, but said checks were negotiated by the Internal Revenue Service after the November 12, 1996 filing of the Notice of Federal Tax Lien with the Recorder of Mahoning County, Ohio:

| | |
|---|---|
| November 15, 1996 | $ 5,064.86 |
| November 15, 1996 | $ 5,063.97 |
| Total: | $10,128.83 |

6. Wages of the plaintiffs were levied upon within ninety days of the filing

date of the plaintiff's [sic] petition in bankruptcy on the following dates and corresponding amounts:

| | |
|---|---:|
| November 18, 1996 | $ 772.06 |
| November 22, 1996 | $ 630.12 |
| December 02, 1996 | $ 772.06 |
| December 09, 1996 | $ 630.12 |
| December 16, 1996 | $ 772.06 |
| December 20, 1996 | $ 731.63 |
| January 02, 1997 | $ 772.06 |
| January 03, 1997 | $ 630.12 |
| January 10, 1997 | $ 772.06 |
| January 16, 1997 | $ 630.12 |
| Total: | $ 7,112.41 |

7. On February 3, 1997, the Internal Revenue Service levied upon the wages of the plaintiffs in the amount of $772.06. This levy occurred after the date the plaintiffs filed their petition in bankruptcy (post-petition levy).

8. No proofs of claim were filed in plaintiffs' bankruptcy proceeding within the prescribed time period for filing claims which set forth claims described in Sections 507(a)(2) through (a)(7) of the Bankruptcy Code.

9. On the date of the filing of the bankruptcy petition in this proceeding, the bankruptcy estate contained assets with a minimum value of $3,158.00 which were not exempt property and which did not otherwise secure any interest of any creditor of the plaintiffs. Accordingly, this amount, at a minimum, on the date the plaintiffs filed their petition in bankruptcy, was available to pay administrative claims described in section [sic] 507(a)(1) of the Bankruptcy Code.

10. On the date the plaintiffs filed their petition in bankruptcy, there were no claims described in section [sic] 507(a)(1) against the bankruptcy estate.

### B. Issue

The primary issue before us is whether transfers of an interest of a debtor in property, specifically tax levies on Plaintiffs' IRAs and the garnishment of Plaintiffs' wages, are avoidable preferences if such transfers take place within the 90-day period set forth in 11 U.S.C. § 547(b)(4)(A).

In Defendant's motion for summary judgment and supplements filed thereto, Defendant first argues that the filing of the notice of federal tax lien within the 90-day preference period is not itself an avoidable transfer. Defendant asserts that the filing of the notice of federal tax lien is the fixing of a statutory lien and thus is an unavoidable preferential transfer pursuant to § 547(c)(6).

Defendant next argues that it should be treated as a secured creditor with regard to Plaintiffs' IRAs and wages because (a) the federal tax liens attached to Plaintiffs' IRAs when the 1982, 1983 and 1984 federal income taxes were assessed and notice and demand for payment were made upon Plaintiffs; (b) the federal tax liens on Plaintiffs' IRAs survive bankruptcy if Defendant had not levied; (c) treating Defendant as an unsecured creditor with respect to Plaintiffs' IRAs leads to an anomalous result since Defendant had a perfected federal tax lien on all of Plaintiffs' property at the time Plaintiffs filed for bankruptcy; and (d) Defendant had a perfected security interest in Plaintiffs' levied wages via statutory lien and as such the levied wages are an unavoidable preference.

Plaintiffs are not attempting to avoid the November 12, 1996 lien. They argue that under § 547(b) both the wage garnishments and the IRA levies enabled Defendant to receive more than it would have received as an unperfected secured creditor had Plaintiffs filed under Chapter 7 for Plaintiffs' tax liabilities for the tax years 1982, 1983 and 1984. See Plaintiffs' Motion for Summary Judgment, page 6.

### C. Discussion

A lien arises in favor of Defendant upon all property and rights to property, real or personal, belonging to a taxpayer who neglects or refuses to pay any federal tax after demand. 26 U.S.C. § 6321. The lien imposed by § 6321 arises at the time the assessment is made

and continues until the assessed liability is satisfied or becomes unenforceable by reason of lapse of time. 26 U.S.C. § 6322. Here, Defendant obtained a valid statutory lien[1] on all property of Plaintiffs on May 13, 1996, the date of assessment of Plaintiffs' tax liability for the years 1982, 1983 and 1984. Thus, as of May 13, 1996, Defendant had a valid statutory lien in the amount of $39,572.37.[2] Furthermore, this statutory lien was perfected against Plaintiffs without the necessity of filing a notice of federal tax lien. *In re Berg,* 188 B.R. 615 (9th Cir. BAP 1995). *See also* 15 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ TX4.04[1] at TX4–34 (15th ed. rev.1995).

During the period of November 4–8, 1996, Defendant levied upon Plaintiffs' IRAs in the total sum of $21,116.44 pursuant to its authority under 26 U.S.C. § 6331.[3] On November 12, 1996, Defendant filed a notice of federal tax lien with the Recorder of Mahoning County, Ohio, with respect to Plaintiffs' tax liability, including interest and penalties, for the years 1982, 1983 and 1984 in the amount of $74,999.57. Subsequent to the filing of the notice of federal tax lien, Defendant levied upon additional IRAs as well as wages[4] of Plaintiffs totaling $17,241.24 between November 15, 1996 and January 16, 1997. Plaintiffs filed their petition for relief under Chapter 11 of Title 11, United States Code, on January 23, 1997.

We must now determine whether this valid lien was perfected and secured as to Plaintiffs' IRAs and wages under § 6321 in light of § 6323. In doing so, we briefly examine the history and purpose behind this legislation. The purpose behind the enactment of §§ 6321 and 6323 was twofold. First, Congress intended to ensure prompt revenue collection. *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726–27, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). Second, Congress intended to provide protection, i.e., constructive notice, to would-be purchasers and others against the harmful effects of secret tax liens. At first blush, it would appear that 26 U.S.C. § 6323(a) would work to invalidate the lien against Plaintiffs' property and thereby allow Plaintiffs to avoid the levies that occurred prior to November 12, 1996. However, the problem with this analysis is that § 6323(a) only limits the imposition of § 6321's lien under certain circumstances, and thereby creates limited exceptions that require Defendant to file notice in the proper office. Specifically, § 6323(a) states that "[t]he lien imposed by section 6321 shall not be valid as against any *purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor* until notice thereof which meets the requirements of subsection (f) has been filed...." 26 U.S.C. § 6323(a) [emphasis added]. In other words, § 6323(a) requires a notice of federal tax lien to be filed before a tax lien is effective against third parties.

Notwithstanding the foregoing, Plaintiffs fail to qualify as being in the class of persons intended to be protected by Congress' filing requirement of § 6323(a). Plaintiffs are not a third party attempting to avoid a secret lien and thus

---

1. A federal tax lien is a statutory lien. 11 U.S.C. § 101(53).

2. On May 13, 1996, Defendant assessed Plaintiffs for their tax liability for the tax year 1984 in the amount of $16,289.97. Prior to this date, Defendant had assessed Plaintiffs on October 9, 1995 in the amount of $18,510.00 and $1,061.59 for tax years 1983 and 1982 respectively.

3. Individual retirement accounts are not one of the enumerated properties exempt from levy under 26 U.S.C. § 6334.

4. Plaintiffs make no assertion in either their motion or their response that the levies upon their wages were in excess of the allowable amount pursuant to 26 U.S.C. § 6334(d). Plaintiffs do, however, assert that the postpetition levy upon their wages by Defendant in the amount of $772.06 on February 3, 1997 violated the automatic stay. *See* discussion in text *infra.*

cannot seek the protection afforded to such parties under § 6323. Moreover, although a debtor-in-possession has all the rights and powers of a trustee under § 1107, including those rights and powers of a lien creditor or of a successor to certain creditors and purchasers to avoid transfers of property of the debtor under the strong arm clause of § 544, Plaintiffs do not fall under the ambit of § 544. Section 544 grants a trustee/debtor-in-possession the powers that state law would confer upon a hypothetical creditor of the debtor who, as of the commencement of the case, had perfected a judicial lien on the debtor's property. *In re Paramount Int'l*, 154 B.R. 712 (Bankr.N.D.Ill.1993). In the instant case, Defendant had perfected its lien prior to the filing of Plaintiffs' petition for relief. Under § 6321, Defendant's lien was effective and not subject to avoidance under § 544. A strict reading of § 544 reveals that it operates to give a debtor-in-possession the status of a judicial lien creditor only as of the date a petition for relief is filed. Here, § 544 was not operative until the petition for relief was filed. At that point, Defendant already had a perfected lien and § 544 would have no application. Thus, Plaintiffs are unable to claim the status of a judicial lien creditor prior to the petition date in order to effectuate the exception under § 6323. Accordingly, Defendant has a valid perfected and secured lien against all of Plaintiffs' property pursuant to § 6321.

■ We must now inquire whether the levies upon Plaintiffs' IRAs and wages by the perfected and secured Defendant within the 90–day period preceding the filing of Plaintiffs' petition are avoidable as preferential transfers. All of the transfers by

Defendant of Plaintiffs' property fall within the preference period with the exception of one post-petition levy.[5] If the transfers of Plaintiffs' property satisfy the elements set forth in 11 U.S.C. § 547(b), they may be avoided.[6]

11 U.S.C. § 547(b) grants the trustee the power to avoid certain transfers of interest of the debtor in property if five elements are met subject to the exceptions provided in subsection (c) which states in relevant part:

> (c) The trustee may not avoid under this section a transfer—
>
>> (6) that is the fixing of a statutory lien that is not avoidable under section 545 of this title.

11 U.S.C. § 545(2) declares that the trustee may avoid a statutory lien on the debtor's property to the extent that the lien is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser, whether or not such a purchaser exists. However, § 545(2) is inapplicable to the factual situation before us.

■ Thus, we must look to see if the requirements of 11 U.S.C. § 547(b) are satisfied. An avoidable preference under § 547(b) requires the transfer of an interest of the debtor in property (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) made while the debtor was insolvent; (4) made on or within 90 days before the date of the filing of a petition; and (5) that enables the creditor to receive more than such creditor would have received under Chapter 7 of Title 11. Defendant submits that all of these elements are met except 11 U.S.C. § 547(b)(5).[7]

---

5. Defendant levied upon Plaintiffs' wages on February 3, 1997 in the amount of $772.06. Defendant concedes this specific post-petition levy was improper.

6. Plaintiffs do not seek to avoid the federal tax lien filed by Defendant on November 12, 1996 with regard to Plaintiffs' tax liability. Plaintiffs concede that the filing of the notice of federal tax lien is not an avoidable transfer.

7. Defendant, however, does not stipulate that Plaintiffs ever were, or are insolvent. Rather, Defendant relies on the presumption under 11 U.S.C. § 547(f) that the Plaintiffs are presumed to have been insolvent on and during the 90 days immediately preceding the date of filing the petition only for purposes of 11 U.S.C. § 547(b)(3).

The crucial question before us then is whether Defendant's levies upon Plaintiffs' IRAs and the wage garnishments enabled Defendant to receive more than it would have received had the case been one under Chapter 7. For the reasons set forth below, we find that Defendant did not receive more than it would have under a Chapter 7 when it levied upon Plaintiffs' IRAs and garnished Plaintiffs' wages during the 90 days preceding Plaintiffs' petition for Chapter 11 relief.

In its decision of *In re C–L Cartage Co., Inc.*, 899 F.2d 1490 (6th Cir.1990), the Sixth Circuit held that payments to a creditor who is fully secured are not preferential since the creditor would receive payment up to the full value of his collateral in a Chapter 7 liquidation. *Id.* at 1493. We are bound by this Sixth Circuit decision. In the instant case, Defendant had a secured claim in the amount of $39,572.37 in Plaintiffs' property for the tax years 1982, 1983 and 1984. *See* Defendant's Proof of Claim (filed 01/08/98). Defendant was fully secured in this amount by Plaintiffs' property, of which the pre-petition levies upon Plaintiffs' IRAs and wages for the tax years 1982, 1983 and 1984 totaled $38,-357.68. Therefore, because Defendant was a fully secured creditor up to the amount of $39,572.37 for Plaintiffs' tax liabilities for the years 1982, 1983 and 1984, its pre-petition levies upon Plaintiffs' IRAs and wages did not allow it to receive more than it would have in a Chapter 7. Accordingly, the transfers of Plaintiffs' property by Defendant, specifically tax levies on Plaintiffs' IRAs and the garnishment of Plaintiffs' wages, are not avoidable as preferences under 11 U.S.C. § 547(b)(4)(A).

The only issue remaining is whether the post-petition levy of Plaintiffs' wages in the amount of $772.06 violated the automatic stay of § 362. Defendant concedes in its motion that this levy was improper. Such a post-petition levy violates the automatic stay provision and Plaintiffs may avoid that transfer.

**CONCLUSION**

Consistent with the foregoing, the Court grants summary judgment to Defendant in part, and denies Plaintiffs' cross-motion for summary judgment in part. The pre-petition levies upon Plaintiffs' IRAs in the amount of $31,245.27 and the pre-petition wage garnishments in the amount of $7,112.41 by Defendant are not avoidable as preferential transfers under § 547(b). As such, Defendant is entitled to summary judgment on that issue and may retain the funds levied upon Plaintiffs' IRAs and wages in the amount of $38,357.68. Plaintiffs' cross-motion for summary judgment is granted in part with regard to the post-petition levy on Plaintiffs' wages. The post-petition wage garnishment in the amount of $772.06 was in violation of the automatic stay afforded Plaintiffs by § 362. Accordingly, Defendant is required to return the amount of $772.06 to Plaintiffs within 30 days from the date of entry of the following order.