### In re FV STEEL AND WIRE COMPANY,[1] Debtor.

### No. 04–22421–SVK.

United States Bankruptcy Court, E.D. Wisconsin.

May 25, 2004.

Bruce G. Arnold, Whyte Hirschboeck Dudek, S.C., David L. Eaton, Kirkland & Ellis LLP, Chicago, IL, Daryl L. Diesing, Patrick B. Howell, Milwaukee, WI, for Debtor.

David W. Asbach, Milwaukee, WI, for U.S. Trustee.

1. This case and its companion cases are being jointly administered. The other debtors and their original case numbers are:

| | |
|---|---|
| Keystone Consolidated Industries, Inc. | 04–22422 |
| DeSoto Environmental Management, Inc. | 04–22423 |
| J.L. Prescott Company | 04–22424 |
| Sherman Wire Company | 04–22425 |
| Sherman Wire of Caldwell, Inc. | 04–22426 |

Catherine L. Steege, Jeff J. Marwil, Jeremy T. Stillings, Ronald R. Peterson, Chicago, IL, for Creditor Committee.

## MEMORANDUM OPINION AND ORDER ON MOTION OF PSC METALS, INC. FOR DETERMINATION OF EFFECTIVENESS OF FINANCING STATEMENT

SUSAN V. KELLEY, Bankruptcy Judge.

PSC Metals, Inc. ("PSC") filed Motions in these chapter 11 cases for relief from stay and/or for adequate protection and to compel payment of administrative expenses arising out a Scrap Supply and Consignment Agreement, as modified by an Account Reconciliation Agreement (collectively the "Agreement"), between PSC and one of the Debtors. The Debtors objected to the Motions on a number of grounds, and the parties engaged in negotiations to attempt to resolve their disputes.

A major issue between the parties was the validity of a Uniform Commercial Code (UCC) financing statement filed on May 10, 2001 by PSC against "Keystone Steel & Wire Co." At a hearing on March 29, 2004, counsel for PSC represented that the facts concerning the effectiveness of the financing statement were not in dispute, although the parties were categorically opposed on the legal issue. Counsel suggested that if the court determined this single issue on a summary judgment type basis, it would "save a lot of time [and] a lot of money," and facilitate resolution or determination of the remaining disputes in an expeditious manner. The Debtors and Unsecured Creditors Committee agreed, and a briefing schedule was established.

The sole issue is whether the financing statement which was filed in the Debtor's trade name, rather than its corporate name, is effective against the Debtor, as debtor in possession.[2]

Article 9 of the UCC governs the creation and perfection of security interests in personal property. Article 9 was completely overhauled in 2001, and Revised Article 9 became effective for transactions entered into after July 1, 2001. Sections 9–702 and 9–703 of Revised Article 9 provide Savings Clauses for pre-existing perfected security interests. For the most part, those transactions continue to be evaluated under old Article 9. In this case, the Agreement is dated January 31, 2001, prior to the effective date of Revised Article 9. The Agreement states that it is governed by Illinois law. Accordingly, the validity of the financing statement is determined under the Illinois UCC as it existed prior to the effective date of Revised Article 9.

Three provisions of old Article 9 govern the issue presented by PSC's financing statement. Section 9–402(1)(a) requires a financing statement to give the name of the debtor. 810 ILL. COMP. STAT. 5/9–402(1) (2001). Under § 9–202(7), a financing statement is sufficient if it contains the "corporate name," whether or not it "adds trade names." 810 ILL COMP. STAT. 5/9–402(7) (2001). Finally, according to former § 9–402(8), a financing statement containing minor errors will be effective if the errors do not render the filing "seriously misleading." 810 ILL. COMP. STAT. 5/9–402(8) (2001).

PSC filed its financing statement against "Keystone Steel & Wire Co." a trade name used by the Debtor. PSC does not dispute

---

**2.** Section 544 of the Bankruptcy Code gives the trustee the power to avoid unperfected security interests. In chapter 11 cases without a trustee, this "strong arm power" may be exercised by the debtor in possession.

that the Debtor's correct legal name is "Keystone Consolidated Industries, Inc.," but argues that the filing is not seriously misleading. In support of its argument, PSC relies heavily on *In re Paramount Int'l, Inc.,* 154 B.R. 712 (Bankr.N.D.Ill. 1993). In that case, at the time of the original loan, the debtor's name was "Paramount Attractions, Inc." Two months after the creditor filed its financing statement under that name, the debtor changed its legal name to "Paramount International, Inc." The debtor continued to use "Paramount Attractions, Inc." as a trade name, and the creditor never amended its financing statement to reflect the true corporate name. When the debtor filed bankruptcy, it sought to use the avoidance powers of § 544(a) of the Bankruptcy Code to defeat the creditor's security interest. The "ultimate question" for the bankruptcy court was whether the filed financing statement was seriously misleading. *Id.* at 715. Recognizing divergent views, the court in *Paramount* ruled for the creditor. *Id.* at 717. PSC points out the similarities between *Paramount* and the instant case, including that the first names of the debtor's legal names and corporate names are the same, and that a search under the term "Paramount" as a search under the term "Keystone" revealed a significant number of filings, including the erroneous financing statements.

Although many of the facts here are similar to those in *Paramount,* several key facts are different. First, there was no evidence in *Paramount* of whether a search under the correct corporate name would have revealed the financing statement. *Id.* ("The only evidence adduced at trial of actual searches performed revealed the Creditor's filed financing statement

both times.") In our case, a search under the true name did not reveal PSC's financing statement. (PSC's Mem. of Law in Support of the Effectiveness of Uniform Commercial Code Financing Statement ¶ 16.) The only way to find PSC's financing statement is to search (by private search firm) under the name "Keystone" which would reveal 237 filings. (*Id.* at ¶ 19.)

Second, *Paramount* involved a corporate name change of a private company. The name change occurred only a month after the original loan.[3] Keystone is a reporting company with the Securities and Exchange Commission, and has been legally incorporated in Delaware under the name "Keystone Consolidated Industries, Inc." since 1968. (Response of Official Committee of Unsecured Creditors of FV Steel and Wire Co. ¶¶ 6, 7.) PSC recognized Keystone's true corporate name in the original Agreement, which is between PSC and "Keystone Steel & Wire, a division of Keystone Consolidated Industries, Inc." And the Account Reconciliation Agreement dated March 11, 2002, is between PSC and "Keystone Consolidated Industries, Inc. d/b/a Keystone Steel & Wire Company." Unlike the creditor in *Paramount,* who suffered a name change after the original loan agreement, PSC was obviously aware of the correct corporate name of its debtor from the beginning of the transaction, but chose to file under the trade name instead.

Finally, *Paramount* preceded the adoption of Revised Article 9 by many years, while PSC's financing statement was filed within 60 days of the new statute's effective date. It is undisputed that under Revised Article 9, PSC's financing state-

---

**3.** The financing statement was filed on November 26, 1990, and the name change was filed on December 31, 1990. *Paramount,* 154 B.R. at 713. It is not known when the credi-

tor was made aware of the name change, although subsequent amendments to the original loan documents in 1991 reference the name change. *Id.* at 714.

ment would be insufficient as a matter of law. Section 9–503(a) now requires the financing statement to contain the name of a corporate debtor "indicated on the public record of the debtor's jurisdiction of organization," and § 9–503(c) expressly states: "A financing statement that provides only the debtor's trade name does not sufficiently provide the name of the debtor." 810 ILCS 5/9–503(a) and (c) (2003).

The comment to 810 ILCS 5/9–503 states:

> Together with subsections (b) and (c), subsection (a) reflects the view prevailing under former article 9 that the actual individual or organizational name of the debtor on a financing statement is both necessary and sufficient, whether or not the financing statement provides trade or other names of the debtor and, if the debtor has a name, whether or not the financing statement provides the names of the partners, members, or associates who comprise the debtor.

Moreover, a statutory definition of "seriously misleading" was adopted in § 9–506(c) of Revised Article 9, which states:

> If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with Section 9–503(a) [810 ILCS 5/9–503], the name provided does not make the financing statement seriously misleading.

A multitude of seminars and articles heralded the advent of Revised Article 9. *See, e.g.,* Harry C. Sigman, *Symposium: Twenty Questions About Filing Under Revised Article 9: The Rules of the Game Under New Part 5,* 74 Chi.-Kent L.Rev. 861 (1999); Steven O. Weise, *An Introduction to the Revised UCC Article 9,* 70 Pa. Bar Assn. Quarterly 158 (October 1999); Harry C. Sigman, *The Filing System Under Revised Article* 973 Am. Bankr.L.J. 61 (Winter 1999); C. Scott Pryor, *Revised Uniform Commercial Code Article 9: Impact in Bankruptcy,* 7 Am. Bankr.Inst. L.Rev. 465 (Winter 1999); *Revised Article 9 of the UCC: Scope, Perfection, Priorities, and Default,* 4 N.C. Banking Inst. 129 (April 2000); Robert Palmer Rees, *Revised Article 9—Secured Transactions in the 21st Century,* 13 Utah Bar J. 8 (April 2000); Charles Cheatham, *Changes in Filing Procedures Under Revised Article 9,* 25 Okla. City U.L.Rev. 235 (Spring/Summer 2000); Terry M. Anderson et al., *Attachment and Perfection of Security Interests Under Revised Article 9: A "Nuts and Bolts" Primer,* 9 Am. Bankr.Inst. L.Rev. 179 (Spring 2001); Ingrid Michelsen Hillinger and Michael G. Hillinger, *2001: A Code Odyssey (New Dawn for the Article 9 Secured Creditor),* 106 Com. L.J. 105 (Summer 2001).

One of the mantras espoused by the experts was the necessity of using the debtor's correct legal name, not a trade name or nickname. For example, Steven O. Weise, the ABA advisor to the Revised Article 9 Drafting Committee said this about the debtor's name:

> Revised Article 9 continues the requirement that the financing statement include the debtor's name. **Article 9 also continues to disapprove of the use of a fictitious name.** Revised Article 9 contains a statutory rule to determine when a mistake the debtor's name is so incorrect as to make the financing statement ineffective. The financing statement is effective if a computer search run under the debtor's correct name turns up the financing statement with the incorrect name. If it does not, then the financing statement is ineffective as a matter of law. The court has no discretion to

determine that the incorrect name is 'close enough.' As a result, the secured party is dependent on the kind of computer search logic used by a particular state's filing office. **The simple solution is to get the debtor's name right.** Steven O. Weise, *An Overview of Revised Article 9, in The New Article 9 Uniform Commercial Code* 7 (Corinne Cooper, ed., 2d. ed.2000) (citations omitted; emphasis supplied).

In this heady atmosphere of the adoption of Revised Article 9, PSC and the Debtor entered into the Agreement and PSC filed its financing statement. PSC knew the Debtor's correct legal name, as evidenced by the Scrap Supply and Consignment Agreement itself. Given the impending adoption of Revised Article 9, with the publicity about the importance of using the debtor's correct legal name, and PSC's knowledge of the true corporate name, PSC ignored the correct legal name and filed under the trade name at its own peril.

Additionally, the *Paramount* case on which PSC relies has been called "dead wrong," by a leading treatise. Barkley Clark and Barbara Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 2.09[1][b] (2003). The treatise further explains:

> If a searcher searches under the exact corporate name of the debtor as contemplated by the UCC, and the search logic of the system does not reveal a trade name filing, the filing should be considered seriously misleading as a matter of law. Until the statute is amended, courts should not allow trade name filing in spite of the vast capabilities of computer data base searches.

*Id.*

In *First Nat'l Bank of Lacon v. Strong*, 278 Ill.App.3d 762, 215 Ill.Dec. 421, 663 N.E.2d 432 (Ct.1996), the Illinois Appellate Court construed a financing statement filed under old Article 9 against the debtor's trade name "Strong Oil Co." when the correct legal name was "E. Strong Oil Company." Relying on a substantial body of authority, the court held that the financing statement was seriously misleading because a search of the financing statement records under the correct corporate name would not have revealed the financing statement. "To hold otherwise would frustrate the underlying purpose of the Code's filing requirements. A rule that would burden a searcher with guessing at misspellings and various configurations of a legal name would not provide creditors with the certainty that is essential in commercial transactions." *Strong*, 663 N.E.2d at 435. The *Strong* decision places the burden where it belongs, on the creditor with the erroneous filing. PSC would have the searchers required to inquire under the trade name, when neither the old nor Revised Article 9 countenances that requirement.

*Strong* and the numerous courts in its camp place a heavy burden on those filing erroneous financing statements. PSC has not met that burden in this case, and PSC's financing statement was "seriously misleading," under 810 Ill. Comp. Stat. 5/9–402(8) (2001). For the foregoing reasons, it is therefore,

ORDERED: that the financing statement filed by PSC Metals, Inc. against Keystone Steel & Wire Co. on May 10, 2001, is determined to be seriously misleading and ineffective to perfect a security interest in the collateral described in that financing statement.